66 P.3d 1102 (2003)
Sandy JUDD, Tara Herivel, and Zuraya Wright, for themselves, and on behalf of all similarly situated persons, Appellants,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY; Defendant,
GTE Northwest, Inc.; Centurytel Telephone Utilities, Inc.; Northwest Telecommunications, Inc., d/b/a PTI Communications, Inc.; U.S. West Communications, Inc.; Respondents,
T-Netix, Inc., Defendant.
No. 48075-8-I.
Court of Appeals of Washington, Division 1.
April 14, 2003.
*1103 Chris Robert Youtz & Jonathon P. Meier, Marie Gryphon, Seattle, WA, for Appellants.
Timothy J. O'Connel & Kendall J. Fisher, Kelly Twiss Noonan, Carol S. Arnold, Robert B. Mitchell & Athan E. Tramountanas, Julia Parson Clarke, Kathleen M. O'Sullivan, Teresa W. Gillespie, Kirkland, Donald H. Mullins, Seattle, WA, for Respondents.
GROSSE, J.
The Legislature created a statutory scheme for the regulation of alternate operator service companies. It included a cause of action against providers of telecommunications services for violation of the Consumer Protection Act to assure appropriate disclosure of telephone rates. However, the Legislature did so only for violations of the regulations promulgated by the Washington Utilities and Transportation Commission. Further, the Legislature preempted any direct action against the phone companies. The decision of the trial court is affirmed.

*1104 FACTS
Sandy Judd, Tara Herivel, and Zuraya Wright, hereafter collectively referred to as Judd, brought an action against five telecommunications providers seeking injunctive relief and damages, including damages for violation of Washington's Consumer Protection Act (CPA).[1] The suit is based on the alleged nondisclosure of telephone rates to those accepting long distance collect calls placed by inmates housed in Washington State correctional facilities. Sandy Judd and Tara Herivel received and paid for intrastate long distance collect calls from prison inmates in Washington State. Zuraya Wright received and paid for interstate long distance collect calls from a Washington State prison inmate.[2]
As argued by Judd, the appeal primarily involves a question of whether the phone companies assured the sufficient and appropriate disclosure of rates charged to consumers for services provided while connecting both intrastate and interstate long distance calls from the correctional facilities. We note, as did the trial court, that in doing so, Judd challenges the legitimacy of the Washington Utilities and Transportation Commission (WUTC) regulations, without resorting to the Administrative Procedure Act[3] or making the WUTC a party to the action.
The respondents are three of the five telephone companies sued. U.S. West Communications, Inc. (now Qwest Corporation, hereinafter Qwest); GTE Northwest, Inc. (now Verizon Northwest, Inc., hereinafter Verizon); and CenturyTel Telephone Utilities, Inc. and Northwest Telecommunications, Inc. d/b/a PTI Communications, Inc. (now both known as CenturyTel Telephone Utilities, Inc., hereinafter CenturyTel), collectively called the phone companies or by their current monikers.
Judd's amended complaint alleges that the phone companies failed to make the rate disclosures required under the alternate operator services disclosure statute, RCW 80.36.520. In that statute, the Legislature directed the WUTC to establish rules to require the "appropriate disclosure" of rates of certain phone service providers. The statute provides:
The utilities and transportation commission shall by rule require, at a minimum, that any telecommunications company, operating as or contracting with an alternate operator services company, assure appropriate disclosure to consumers of the provision and the rate, charge or fee of services provided by an alternate operator services company.
For purposes of this chapter, "alternate operator services company" means a person providing a connection to intrastate or interstate long-distance services from places including, but not limited to, hotels, motels, hospitals, and customer-owned pay telephones.
Judd asserts the phone companies violated the CPA by not making the required disclosures. Judd sought damages under RCW 80.36.530[4] and also sought injunctive relief. The complaint does not allege that phone company rates were excessive; that there was an incorrect method of calculation of the rates; or that the phone companies and/or the Department of Corrections conspired to obtain unreasonable profits.[5] Further, Judd does not name the WUTC as a defendant, assert any claims against it, or demand or seek action by it. This, despite Judd's argument that the WUTC exceeded its authority in promulgating its rules or in exempting the phone companies (as local exchange companies) from the disclosure regulations, or by later granting limited and temporary waivers *1105 to the phone companies regarding certain disclosure requirements.
Verizon was the first of the telephone companies to respond to the complaint by filing a motion to dismiss pursuant to CR 12(b)(6), arguing that Judd failed to state a claim upon which relief could be granted.[6] On October 13, 2000, after a hearing, the trial court issued a "Partial Decision on Summary Judgment and Order for Further Briefing," providing in part:
[R]eading the statute as a whole, the legislature intended to create a cause of action under the Washington Consumer Protection Act ("CPA") only for violations of the regulations promulgated by the Washington Utilities and Transportation Commission ("WUTC") and did not create a cause of action for actions beyond or outside of the regulations.
The court held that Judd did not raise such violations but instead attacked the validity and sufficiency of the WUTC regulations, exclusions, and waivers. For this reason, the court held that the telephone companies were all entitled to dismissal from the action unless Judd alleged the telephone companies violated WUTC regulations. The court deferred entry of any orders of dismissal for 10 days to allow Judd to file supplemental briefing asserting violations of WUTC regulations. After the response deadline, the court indicated it would entertain motions to dismiss, or stay the case and refer it to the WUTC under the doctrine of primary jurisdiction for a determination of whether a violation occurred.
Supplemental briefing was provided but it included no allegations of violations of WUTC regulation. Thereafter the lower court dismissed Judd's claims against the telephone companies with prejudice on multiple grounds. First, the court concluded that the alternate operator services disclosure statutes (RCW 80.36.510, .520, .524, and .530) and the WUTC regulations created thereunder set forth a cause of action under the CPA only for violations of the regulations promulgated in response to the statutes. Second, under WUTC regulations the telephone companies' status as local exchange companies was either exempted from compliance under the regulations or, under later amended regulations that no longer provided exemptions for local exchange companies, Verizon and Qwest properly obtained waivers temporarily exempting them from certain specific disclosure requirements. The trial court determined that the case was not the proper proceeding for Judd to challenge the WUTC's regulations or actions as being beyond the scope of the agency's authority. The trial court determined that such a challenge is appropriate only in a proceeding under the Washington Administrative Procedure Act, citing RCW 34.05.510.
Additionally, as to CenturyTel only, the trial court took judicial notice of the fact that CenturyTel was deleted from the prison telephone providers contract in February 1997, and in any event had never provided long distance services to the correctional facilities, only local service. The court based its ruling in part on this fact when it entered judgment in favor of CenturyTel.
The telephone companies moved for entry of judgments pursuant to CR 54(b) on grounds there was no just reason for delay. Seeking an immediate appeal, Judd did not object to entry of final judgments. Thereafter the trial court entered final judgments.
Judd appeals the decisions of the trial court. She asserts that a claim was stated under the CPA for violations of the disclosure statutes; that she is entitled to challenge the validity of the WUTC regulations through this action; that the WUTC exceeded its authority in exempting local exchange companies from the statutory definition of alternate operator services companies in the 1991 regulation, and in the later grant of *1106 waivers to Qwest and Verizon. Finally, Judd asserts that the court should not have partially based its decision on the determination that CenturyTel never provided long distance service.

DISCUSSION
In 1988, after the breakup of the Bell system, the Legislature enacted the first component of the alternative operator services disclosure statutes. The legislation was prompted by a growing number of non-regulated companies that were popping up to provide telecommunication services necessary to long distance service "without disclosing the services provided or the rate, charge or fee."[7] Prior to the 1988 enactment these "new" telephone companies were unregistered with and unregulated by the WUTC. Unlike these new companies, the WUTC possessed the power to regulate local exchange companies, like the respondent telephone companies here. See RCW 80.36.080, RCW 80.36.140.
In 1989, in response to the Legislature's mandate, the WUTC promulgated WAC 480-120-141. This rule imposed limited disclosure requirements on alternate operator services companies, but did not include the full contemporaneous disclosure of rates. The rule was amended in 1991. This amended rule clarified the term "alternate operator services company" by excluding local exchange companies from the definition. Former WAC 480-120-141 (1991). The WUTC explained the exclusion of local exchange companies from the requirements as follows:
Unlike LECs [local exchange companies], AOS [alternate operator services] companies can be seen as entering and [exiting] markets at will. AOS companies were the subject of specific legislative enactment. AOS companies often charge higher rates than LECs, leading to consumer complaints. Consumers often expect that they are using their LEC when they use a pay phone; requirements that apply to non-LEC companies to inform the consumer that it is not the LEC are reasonable. Washington State Register XX-XX-XXX, at 106-07 (1991).
In 1988, as revised in 1990, the Legislature enacted RCW 80.36.530, which provides:
In addition to the penalties provided in this title, a violation of RCW 80.36.510, 80.36.520, or 80.36.524 constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act.... It shall be presumed that damages to the consumer are equal to the cost of the service provided plus two hundred dollars. Additional damages must be proved.
In 1991, the WUTC imposed a limit on the maximum rate to consumers for providing alternate operator services by specific reference to the rates charged by Qwest and American Telephone and Telegraph Company (AT & T). Former WAC 480-120-141(11) (Supp.1991). The WUTC also indicated that disclosure was required by the alternate operator services companies "upon request." See former WAC 480-120-141(5)(iii)(a) (1991).
In 1999, following changes in guidelines and rules of the Federal Communications Commission, the WUTC modified the disclosure requirements. The modified rules required:
Before an operator-assisted call from an aggregator location may be connected by a presubscribed OSP [operator service provider], the OSP must verbally advise the consumer how to receive a rate quote, such as by pressing a specific key or keys, but no more than two keys, or by staying on the line.... This rule applies to all calls from pay phones or other aggregator locations, including prison phones, and store-and-forward pay phones or "smart" telephones.
Former WAC 480-120-141(2)(b) (1999). These revisions made disclosure requirements applicable to local exchange companies. The 1999 revised rules imposed more stringent disclosure requirements. But the revision of the regulations also allowed for potential waivers by the WUTC. Verizon and Qwest filed timely waiver petitions with the *1107 WUTC alleging, among other things, that the technology to access the information required by the more stringent disclosure requirements had not been perfected.[8]
Judd argues that RCW 80.36.520 provides an independent basis, without any reference to the WUTC or its regulations, for her direct claim against the telephone companies for their failure to make the disclosures. We cannot accept this claim.
RCW 80.36.510, entitled "Legislative finding," indicates its concern regarding the proliferation of the alternate operator services companies since the breakup of the Bell system, and the rates those companies were charging. The Legislature found that the provision of these services without disclosure to consumers was a deceptive trade practice. This statute provides an introduction to legislative policy, and statutory policy statements do not give rise to enforceable rights in and of themselves.[9] It is the statutory sections that follow the policy statement that provide the enforceability of certain rights. As the Final Bill Report of Senate Bill 6745[10] provides:
The Utilities and Transportation Commission is to require that the provision and the charge, fee, or rate of alternate operator services are disclosed appropriately to consumers. Failure to disclose constitutes a violation of the Consumer Protection Act.
The language of RCW 80.36.520 does not specifically require that telephone companies make contemporaneous disclosures. A plain reading of the statute indicates that the legislative requirement directed the WUTC to assure "appropriate disclosure" to consumers through promulgation of rules. It is within the purview of the WUTC to direct how, when, or to whom the disclosure is made. Further, RCW 80.36.524 sets forth that the WUTC may adopt rules providing for the minimum service levels for telecommunications companies providing alternate operator services.
In the statutory scheme, RCW 80.36.530 sets forth that in addition to the penalties provided in the act, a violation of RCW 80.36.510, .520, and .524 constitutes violation of the CPA. We agree with the trial court that when these statutes are read together, in order for there to be a failure to disclose that is actionable under the CPA, the failure must violate the rules adopted by the WUTC. The trial court's interpretation achieves the legislative goal of creating a CPA cause of action for failure to disclose long distance alternate operator services rates consistent with the legislative finding of RCW 80.36.510. This interpretation properly places responsibility on the WUTC to promulgate rules requiring "appropriate disclosure" and "minimum service levels" in accordance with RCW 80.36.520 and .524.[11]
*1108 To accept Judd's arguments would require this court to rewrite three relatively unambiguous statutes. This we cannot do.
Judd also claims the trial court erred in concluding that the exclusive means of challenging the validity of the regulations was a proceeding under the Administrative Procedure Act. Again, Judd's argument misses the mark.
Judd acknowledges that this case is an attempt to challenge the validity of the WUTC regulations as exceeding the statutory authority of the agency but argues that it is not a review proceeding under the Administrative Procedure Act. We disagree. The Administrative Procedure Act, RCW 34.05.510,[12] is the exclusive means of judicial review of agency action. The act governs challenges to the validity of agency regulation.[13]
Of more serious concern is Judd's argument that her claims come within the "money damages only" exception of the Administrative Procedure Act, RCW 34.05.510(1). We disagree with this claim for a couple of reasons. First, the pleadings technically belie the argument. Judd seeks injunctive relief as well as a claim of money damages.[14] Although Judd claims she would forego the injunctive relief, she has never moved to withdraw that portion of her claim, only stating she would if necessary. Additionally, Judd seeks specific statutory remedies of presumed damages plus $200 and treble damages under the CPA. In a recent case regarding equitable liens against the federal government, the United States Supreme Court held that in a case with a similar type of prayer for relief, seeking more than "mere compensation," the prayer took the action outside of any "money damages only" exception.[15] Regardless, the damages prayed for here are necessarily for a violation of established agency rules and Judd does not claim any violation of these rules.
Further, the removal of local exchange companies from the 1991 alternate operator services disclosure regulations does not conflict with the disclosure provisions of RCW 80.36.520. RCW 80.36.520 requires the WUTC to assure appropriate disclosure to consumers. At the time of the 1991 alternate operator services regulation, local exchange companies were already required to disclose rates. The issue of determining what appropriate disclosure is, is exactly what the Legislature delegated to the WUTC. In its discretion, the WUTC concluded that the existing level of disclosure was appropriate, especially considering it was the non-local exchange companies that the Legislature pointed to as the problem companies charging higher rates. Where the Legislature specifically delegates to an administrative agency the power to make the rules, there is a presumption that such rules are valid.[16]
For example, as to the later waivers allowed by the WUTC, the waiver granted to Qwest reads in part as follows:
The Commission finds that this is a sound request since the Company's operated-assisted rates compare favorably to other carrier's rates that serve inmate phones. With the condition of providing the Commission with a monthly report outlining specific action steps taken to ensure implementation of this technology by year end, the Commission will grant the waiver, temporarily, of WAC 480-120-141(2)(b) until *1109 December 1, 2000 only as it applies to the receiver of the collect call....[17]
This waiver temporarily relieved Qwest, and a similar waiver temporarily relieved Verizon, from the requirement of oral disclosure of how to obtain a rate quote under the 1999 regulation, but it did not relieve the phone companies from the duty to disclose its rates by tariff.
Judd cites the case of Rios v. Department of Labor & Industries[18] regarding the limits of agency discretion in carrying out mandatory duties imposed by statute. There the court distinguished between a mandatory duty and the agency's procedural discretion in implementing the duty. The Rios case is distinguishable from this case in at least two ways. First, in Rios, pesticide handlers challenged the validity of a Department of Labor & Industries' rule, and also challenged the Department's subsequent failure to initiate additional rulemaking under the Administrative Procedure Act. Here, unlike in Rios, Judd has failed to challenge either the validity of the WUTC rules or its failure to initiate rulemaking under the Administrative Procedure Act. Second, as explained in Rios, under the rules of the Washington Industrial Safety and Health Act of 1973,[19] the Department has a mandatory duty to adopt a safety regulation after it investigates and compiles evidence that a proposed regulation is appropriate. Upon obtaining such evidence, the Department of Labor & Industries no longer has discretion, it must adopt a safety regulation. But here, the alternate operator services statute has no similar language removing discretion from the WUTC.
The mandatory duty placed on the WUTC is that it adopt rules regarding appropriate disclosure. What was in fact "appropriate" was left to the discretion of the WUTC. The WUTC did not compile evidence that these phone companies inappropriately charged the consumer. In fact, the opposite was true. If Judd desired to challenge the validity of the rules or wanted to sue to compel the WUTC to promulgate additional rules then she should have brought the WUTC into the suit.
Even if WUTC regulations are determined to be invalid, the telephone companies' good faith reliance on the validity of the regulations would likely be a defense to Judd's claims for damages in any subsequent proceeding.[20]
Finally, Judd claims the trial court erred in dismissing claims against CenturyTel based, in part, on a determination that CenturyTel provided only local service and never provided long distance service. A review of the record supports the fact that neither PTI Communications, Inc., nor CenturyTel provided long distance telephone or long distance operator services with respect to Washington State prison inmates. PTI Communication, Inc.'s role as a subcontractor to AT & T was limited to local telephone service.
The decision of the trial court is affirmed.
AGID, J., concurs.
APPELWICK, J. (Dissenting in part).
The majority opinion states that RCW 80.36.510 merely provides an introduction to legislative policy that does not give rise to enforceable rights in and of themselves. Majority opinion at page 1107. I must take issue with this premise and the results which flow from it.
RCW 80.36.510, .520, and .530 were enacted as sections (1), (2), and (3) respectively of chapter 91, Laws of 1998. They must be read together. RCW 80.36.530 states: "[A] violation of RCW 80.36.510 or 80.36.52[0] constitutes ... a violation of chapter 19.86 RCW, the consumer protection act...." It goes on to provide a special damages rule *1110 that is different from the general rule stated in chapter 19.86 RCW. Subsequent amendments to chapter 19.86 RCW are of no consequence to this analysis and will not be discussed here.
"`Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" City of Seattle v. State, 136 Wash.2d 693, 701, 965 P.2d 619 (1998) (quoting Whatcom County v. Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996)). To give effect to RCW 80.36.530 requires that we read RCW 80.36.510 and .520 as creating rules which can be violated, triggering the penalties of RCW 80.36.530.
RCW 80.36.520 requires the Washington Utilities and Transportation Commission (WUTC) to adopt the rules. Any rule adopted by the WUTC must require a company operating as or contracting with an alternative operator services company (AOSC) to make two disclosures at a minimum. The rule must require disclosure of the AOSC service and of the charge or basis of the charge to be made. Nowhere in RCW 80.36.520 does the language expressly impose a substantive requirement directly on the telecommunication company. The WUTC could violate this section by failing to adopt rules, or by adopting rules which failed to conform to the statute. However, no one other than the WUTC could violate this section.
Clearly, the Legislature did not say a violation of the rules promulgated by the WUTC pursuant to RCW 80.36.520 is a violation of chapter 19.86 RCW. Yet, both the trial court and the majority concluded that when the Legislature said, "in violation of RCW 80.36.520," it intended the consumer protection act to apply only to violations of the rules once adopted pursuant to RCW 80.36.520 by the WUTC. Such a reading is a reasonable means to discharge the duty to give effect to that portion of RCW 80.36.530. Since Judd had not alleged violation of these rules, she could not establish a consumer protection action by way of violation of RCW 80.36.520. I agree with that analysis. I also agree she did not properly challenge the rules.
While the majority properly supplied an implied legislative intent relative to agency rules to give effect to the cross-reference to RCW 80.36.520, it failed to give effect to the cross-reference to RCW 80.36.510. RCW 80.36.510 provides:
The legislature finds that a growing number of companies provide, in a nonresidential setting, telecommunications services necessary to long distance service without disclosing the services provided or the rate, charge or fee. The legislature finds that provision of these services without disclosure to consumers is a deceptive trade practice.
This section says two things: (1) there is a growing problem with disclosure; and (2) providing service without disclosure is a deceptive trade practice. The first sentence is a factual observation within the legislative purview. Reading it without the words, "[t]he legislature finds that," makes clear the nature of the statement. Leave the same words off the second sentence, and one readily observes that the second sentence is a statement of law, not a finding of fact: "provision of these services without disclosure to consumers is a deceptive trade practice." RCW 80.36.510. If the trial court mislabels a conclusion of law and calls it a finding of fact, we would readily correct the label. We must do the same here. Only the second sentence of RCW 80.36.510 could give rise to a violation. We are bound to give it effect in order to avoid rendering the cross-reference in RCW 80.36.530 meaningless.
Clumsy or not, like the policy or not, this language is what the Legislature wrote. We must give it effect. The result is that RCW 80.36.510 may be violated independent of RCW 80.36.520. It may be violated by providing telecommunications services, in a nonresidential setting, without disclosing the services provided or the rate, charge or fee. Violation is a deceptive trade practice. Penalties are available under RCW 80.36.530 and chapter 19.86 RCW.
Summary judgment was therefore improper on this issue. Judd should have been allowed to proceed to trial to attempt to *1111 prove violation of RCW 80.36.510 and to recover damages consistent with such proof.
Therefore, I respectively dissent.
NOTES
[1] RCW 19.86 et seq.
[2] The case was brought, but never certified, as a class action for those persons who have been called by inmates at any time since June 20, 1996.
[3] Chapter 34.05 RCW.
[4] RCW 80.36.530 provides that violations of alternate operator services rules are violations of the CPA. The statute is set forth later in this opinion.
[5] Any allegations concerning excessive rates and profits were raised for the first time on appeal (Opening Brief of Appellants at 6 n. 1), are inconsistent with Judd's position below, and will not be considered by this court on appeal. See Bravo v. Dolsen Cos. 125 Wash.2d 745, 750, 888 P.2d 147 (1995).
[6] Verizon's argument was based on the fact that RCW 80.36.520 did not impose any direct obligation on it, but directed the WUTC to promulgate regulations. Even if Verizon had a direct duty under the statute, Verizon argued it did not violate the WUTC regulations regarding "appropriate disclosure" because it was exempted from them before the 1999 amended regulations as a local exchange company, or was properly granted a waiver regarding the requirements. Further, Verizon correctly asserted that Judd's claims were subject to primary jurisdiction of the WUTC.
[7] RCW 80.36.510.
[8] In addition the waiver petitions or amended waiver petitions specifically requested a permanent waiver of that portion of the rule requiring automatic rate disclosure from the party originating the collect call, when that call originates from an inmate phone at a correctional facility. This was requested based on concerns that inmate access to live operators could result in fraud and harassment. The limited duration permanent waivers were granted on the condition that the telephone companies have technology in place no later than the last quarter of 2000 to allow recipients of inmate initiated collect calls to access rate information.
[9] In re Welfare of J.H., 75 Wash.App. 887, 891, 880 P.2d 1030 (1994).
[10] Effective June 9, 1988.
[11] Additionally, Judd's argument does not take into consideration that the respondent telephone companies were local exchange companies already subject to regulation by the WUTC. See RCW 80.36.080 (rates, services, and facilities); RCW 80.36.100 (tariff schedules to be filed and open to public); RCW 80.36.140 (rates and services fixed by commission, when). Of particular relevance here is that the WUTC determines whether the rates of the telephone companies are just and reasonable. The telephone companies are required to file their tariffs. A tariff lists the rates, terms, and conditions under which service providers offer services to their customers. RCW 80.36.100; Allen v. Gen. Tel. Co. of the Northwest, Inc., 20 Wash.App. 144, 145, 578 P.2d 1333 (1978). Although this court recognizes that it is likely a legal fiction, once a tariff has been properly filed with and accepted by the WUTC, a consumer is conclusively presumed to know the tariff's contents. Hardy v. Claircom Communications Group, Inc., 86 Wash.App. 488, 492, 937 P.2d 1128 (1997) (claims barred because company disclosed rates in tariff). Therefore, the companies here have already appropriately disclosed their rates.
[12] The relevant portions of RCW 34.05.510 include:

This chapter establishes the exclusive means of judicial review of agency action, except:
(1) The provisions of this chapter for judicial review do not apply to litigation in which the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim.
[13] Manor v. Nestle Food Co., 131 Wash.2d 439, 445-46, 932 P.2d 628 (1997); 945 P.2d 1119.
[14] In her complaint Judd indicated that the plaintiffs and their class are entitled to an injunction under RCW 19.86.090.
[15] See Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260-61, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999).
[16] Weyerhaeuser Co. v. Dep't of Ecology, 86 Wash.2d 310, 314, 545 P.2d 5 (1976); Armstrong v. State, 91 Wash.App. 530, 536-37, 958 P.2d 1010 (1998).
[17] Order of Wash. Utils. & Transp. Comm'n Granting Full and Partial Temporary Waiver of WAC 480-120-141(2)(b), In re Request for Waiver of Admin. Rules for Qwest Corp., No. UT-990043 (Sept. 27, 2000).
[18] Rios v. Dep't of Labor & Indus., 103 Wash. App. 126, 5 P.3d 19 (2000), aff'd in part, rev'd in part, 145 Wash.2d 483, 39 P.3d 961 (2002).
[19] Chapter 49.17 RCW.
[20] See Donaldson v. United States Dep't of Labor, 930 F.2d 339, 345 n. 10 (4th Cir.1991); Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 809 (8th Cir.1979).