95 P.3d 337 (2004)
152 Wash.2d 195
Sandy JUDD, Tara Herivel and Zuraya Wright, for themselves, and on behalf of all similarly situated persons, Petitioners,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY; GTE Northwest, Inc.; Centurytel Telephone Utilities, Inc.; Northwest Telecommunications, Inc. d/b/a PTI Communications, Inc.; U.S. Pwest Communications, Inc.; T-Netix, Inc., Respondents.
No. 73966-8.
Supreme Court of Washington, En Banc.
Argued March 9, 2004.
Decided July 29, 2004.
*338 Jonathan P. Meier, Chris Robert Youtz, Sirianni Youtz Meier & Spoonenmore, Seattle for Petitioners.
Kelly Twiss Noonan, Seattle, for Respondent American Telephone and Telegraph Co.
Robert Bertelson Mitchell, Athan Emmanuel Tramountanas, Preston Gates & Ellis LLP, Seattle, for Respondents Centurytel *339 Telephone Utilities, Northwest Telecommunications Inc., PTI Communications Inc.
Timothy J. O'Connell, Stoel Rives LLP, Seattle, for Respondents GTE Nortwest Inc., Verizon Northwest Inc.
Julia Parsons Clarke, Kathleen M. O'Sullivan, Michael E. Bindas, Perkins Coie LLP, Seattle, for Respondent Qwest Corp.
Donald H. Mullins, Badgley Mullins Law Group PLLC, Seattle, for Respondent T-Netix Inc.
Teresa Williams Gillespie, Kirkland, for Respondent U.S. West Communications Inc.
Kendall Joy Fisher, Puget Sound Energy, Bellevue, for Respondent Verizon Northwest Inc.
FAIRHURST, J.
Petitioners Sandy Judd, Tara Herivel and Zuraya Wright (hereinafter collectively Judd) are individuals who received long distance collect telephone calls from Washington prison inmates between 1996 and 2000. Respondents Qwest Corporation (formerly U.S. West Communications, Inc., hereinafter Qwest), Verizon Northwest, Inc. (formerly GTE Northwest, Inc., hereinafter Verizon), and CenturyTel Telephone Utilities, Inc. (formerly CenturyTel Telephone Utilities, Inc., and Northwest Telecommunications, Inc., d/b/a PTI Communications, Inc., hereinafter CenturyTel) provided pay phone service in Washington prisons as local exchange carriers (LECs) during those years. Judd claims the respondents failed to disclose their long distance operator service rates to Judd and other recipients of collect calls from inmates. According to Judd, the legislature provided a cause of action to address this lack of disclosure in RCW 80.36.510. Judd also purports to challenge the validity of certain exemptions or waivers provided in the disclosure regulations that the Washington Utilities and Transportation Commission (WUTC) promulgated pursuant to RCW 80.36.520. Finally, Judd challenges the trial court's finding that CenturyTel did not provide long distance telephone service in Washington prisons during the years relevant to this lawsuit.
We reject Judd's arguments. First, RCW 80.36.510 does not establish a cause of action independent from claims based on violations of the disclosure regulations adopted by the WUTC. Second, Judd may not challenge the WUTC's disclosure regulations in a non-Administrative Procedure Act (APA), chapter 34.05 RCW, review proceeding. Finally, the trial court properly determined that CenturyTel provided only local telephone service to Washington prisons.
The judgment of the Court of Appeals is affirmed.

I. STATEMENT OF THE CASE
Enacted in 1988, RCW 80.36.510, .520, and .530 address the disclosure of rates charged by alternate operator services (AOS) companies for services incident to intrastate or interstate long distance telephone calls from nonresidential locations. Section .510 expresses the legislature's finding that a failure to disclose such rates, charges, or fees is a "deceptive trade practice."[1] Section .520 directs the WUTC to promulgate rules to assure appropriate rate disclosures by AOS companies.[2] Section .530 then declares that "a violation of RCW 80.36.510, 80.36.520, or 80.36.524 constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act."[3]
*340 As required by RCW 80.36.520, the WUTC first promulgated AOS disclosure regulations in 1989. The WUTC subsequently amended the regulations in 1991 and 1999. The 1991 regulations specifically exempted LECs from the definition of an AOS company and, therefore, did not require LECs to make the extra disclosures required of other AOS companies. Former WAC 480-120-021 (1991). The WUTC eliminated the LEC exemption when it amended the regulations in 1999 but permitted competitive telecommunications companies to request temporary waivers to delay compliance with the disclosure regulations. WAC 480-120-024.
Judd sued Qwest, Verizon, and CenturyTel (as well as other companies that are no longer part of the suit), alleging that each company failed to disclose its rates for long distance operator assistance services for calls placed by prison inmates. The complaint alleged violations of RCW 80.36.520 and .530, and sought statutory damages under section .530. Judd also sought injunctive relief. Although the complaint did not specifically allege a violation of section .510 or specifically challenge the validity of the WUTC's regulations, Judd argued the complaint encompassed these claims as well. Despite purporting to challenge the regulations, Judd did not bring an APA action, did not name the WUTC as a party, and did not request that the WUTC take any action.
The trial court concluded that RCW 80.36.510, .520, and .530 only create a cause of action for violation of the WUTC's disclosure regulations. Although the trial court specifically invited Judd to provide supplemental briefing on such violations, Judd failed to allege that the telephone companies violated any of the disclosure regulations. The trial court also concluded that Judd could not challenge the LEC exemption to the 1991 disclosure regulations or the temporary waiver provisions of the 1999 disclosure regulations in a non-APA proceeding and without joining the WUTC as a party. Finally, the trial court determined that CenturyTel never provided services for long distance telephone calls. Judd's claims against the telephone companies were dismissed with prejudice, and the trial court entered final judgments pursuant to CR 54(b).
Judd timely appealed to the Court of Appeals. A majority of the Court of Appeals panel affirmed the trial court's conclusion that RCW 80.36.510, .520, and .530 only create a cause of action for a violation of the WUTC's disclosure regulations. Judd v. Am. Tel. & Tel. Co., 116 Wash.App. 761, 769-71, 66 P.3d 1102 (2003). The Court of Appeals also affirmed the trial court's conclusion that Judd could not challenge the WUTC regulations in a non-APA proceeding, and its conclusion that CenturyTel did not provide services incident to long distance telephone calls. Id. at 771-74, 66 P.3d 1102. In addition to affirming the trial court, the Court of Appeals concluded that the WUTC acted within the discretion granted to it by RCW 80.36.510, .520, and .530 when it exempted LECs from the 1991 regulations and permitted temporary waivers in the 1999 regulations. Id. at 772-73, 66 P.3d 1102.
We granted Judd's subsequent petition for review. Judd v. Am. Tel. & Tel. Co., 150 Wash.2d 1017, 81 P.3d 120 (2003).

II. ISSUES
A. Does RCW 80.36.510 impose substantive duties on AOS companies separate from the regulations promulgated by the WUTC?
B. May petitioners challenge the WUTC's disclosure regulations in a non-APA proceeding?
C. Did the trial court properly find that CenturyTel did not provide long distance services?

III. ANALYSIS
"Construction of a statute is a question of law which we review de novo under the error of law standard." Waste Mgmt. of *341 Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 627, 869 P.2d 1034 (1994).

A. Does RCW 80.36.510 impose substantive duties on AOS companies separate from the regulations promulgated by the WUTC?
There is no dispute that the legislature delegated authority to the WUTC to create disclosure regulations for AOS companies in RCW 80.36.520. Similarly, given a plain reading, section.510 appears simply to represent the legislature's findings regarding the need for such regulations. The source of contention upon which Judd's lawsuit is based is found in section .530.
RCW 80.36.530 states that a violation of sections .510, .520, or .524 constitutes a violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. On its face, however, this mandate seems at odds with the plain language of sections .510 and.520. How could section .520 itself, which merely directs the WUTC to adopt regulations, form the basis of a CPA violation? Similarly, what kind of violation can or should be divined from the amorphous "legislative finding" language in section.510? The primary question presented in this case, therefore, is how to interpret legislative intent in sections .510 and.520 in light of the mandate provided in section .530.
Judd argues that RCW 80.36.510 provides a cause of action for failure to provide disclosure of rates for certain long distance calls that is independent from violations of WUTC regulations promulgated under RCW 80.36.520. Judd and the Court of Appeals dissent focus their interpretation of this statute on the notion that "[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (emphasis added); Judd, 116 Wash.App. at 775, 66 P.3d 1102. In order to find an independent cause of action in section .510, however, we would be required to read section .510 "without the words, `[t]he legislature finds that.'"[4]Judd, 116 Wash.App. at 776, 66 P.3d 1102. Reading words out of section .510 in order to interpret the word "or" in section .530 would not be consistent with the notion that all words in a statute should be given effect.
Instead, proper interpretation of RCW 80.36.510 requires us to read section .510 together with both sections .520 and.530. See Kilian v. Atkinson, 147 Wash.2d 16, 21, 50 P.3d 638 (2002) ("In construing a statute, courts should read it in its entirety, instead of reading only a single sentence or a single phrase." (footnote omitted)); State v. Thorne, 129 Wash.2d 736, 761, 921 P.2d 514 (1996) ("Each provision must be viewed in relation to the other provisions and harmonized...."). Only when read together do the provisions of sections .510, .520, and .530 make sense.
When the legislature employs the words "the legislature finds," as it did in RCW 80.36.510, it sets forth policy statements that do not give rise to enforceable rights and duties. See Aripa v. Dep't of Soc. & Health Servs., 91 Wash.2d 135, 139, 588 P.2d 185 (1978). When considered without reference to section .510, section .520 merely requires the WUTC to act by promulgating regulations and does not impose any positive requirements on telecommunications companies. When read together with the policy statements in section .510 and the language of section .530, however, it is reasonable to conclude, as both the trial court and the Court of Appeals majority did, that the legislature intended a violation of the WUTC regulations promulgated pursuant to section .520 to constitute a violation of the CPA.
The Court of Appeals dissent argues that such an interpretation does not give effect to RCW 80.36.510. To the contrary, however, the legislative policy statements in section .510 are "to be considered in construing, interpreting, and administering [the statute]. Such declarations and recitals, while not operative rules of action, may play *342 a very important part in determining what action shall be taken." Whatcom County v. Langlie, 40 Wash.2d 855, 863, 246 P.2d 836 (1952) (citations omitted). No additional meaning or effect must be read into section .510.
Considering RCW 80.36.510, .520, and .530 in pari materia, the Court of Appeals majority properly concluded that "in order for there to be a failure to disclose that is actionable under the CPA, the failure must violate the rules adopted by the WUTC." Judd, 116 Wash.App. at 770, 66 P.3d 1102. We affirm. Because we affirm the Court of Appeals decision that section .510 does not create a separate cause of action, we do not address whether the telephone companies provided adequate disclosure by filing rates with the WUTC.

B. May petitioners challenge the WUTC's disclosure regulations in a non-APA proceeding?
The APA "establishes the exclusive means of judicial review of agency action." RCW 34.05.510. "In an action challenging the validity of a rule, the agency shall be made a party to the proceeding." RCW 34.05.570(2)(a). Although Judd challenges the validity of the LEC exception in the WUTC's 1991 disclosure regulations and the waiver provisions of the 1999 disclosure regulations, Judd has not brought an APA action and has not made the WUTC a party to these proceedings.
The APA provides certain limited exceptions to the general rule that challenges to an agency action must be brought under the APA. The exception invoked by Judd permits "litigation in which the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim." RCW 34.05.510(1) (emphasis added). In her complaint, however, Judd requested an injunction under RCW 19.86.090, and under the common law, in addition to money damages. Despite acknowledging that the claim for injunctive relief was never abandoned, Judd argues that the trial court had a duty to amend the complaint to permit the case to be heard as a non-APA action.
Judd claims her position is analogous to the plaintiff in Seattle Professional Photographers Ass'n v. Sears, Roebuck & Co., 9 Wash.App. 656, 661, 513 P.2d 840 (1973). In that case, however, the plaintiff made a specific request to amend its complaint in a brief to the trial court. The court held that the request in the brief was sufficient to amend the complaint without the need for a separate motion to amend. Id. at 661, 513 P.2d 840 ("In its trial brief the Association requested permission to amend its complaint.... CR 15 provides that leave to amend shall be freely given when justice so requires. The request to amend should have been granted, and we will consider that the complaint alleges only violations of RCW 19.90.040"). Although Judd's brief to the trial court noted that "the Court can sever the claim for injunctive relief from this Complaint," Judd never requested that the complaint be amended and never moved to withdraw its claim for injunctive relief. Clerk's Papers at 216. We disagree that Judd's invitation to the trial court to abandon the claim for injunctive relief constitutes an affirmative request to amend the complaint. The trial court does not have an obligation to decide whether individual requests for relief should be abandoned.
The Court of Appeals correctly upheld the dismissal of Judd's challenge to the WUTC regulations. The suit was not brought pursuant to the terms of the APA and does not fit the exception for suits limited to money damages because Judd never decided to abandon her request for injunctive relief and never affirmatively asked the trial court to do so. Because Judd sought injunctive relief, we do not need to consider whether her challenge to the WUTC regulations would otherwise satisfy the APA exception for suits in which the sole issue is a claim for money damages or compensation. We also do not need to consider whether the WUTC exceeded its discretion in creating a LEC exception in the 1991 regulations and in providing temporary waivers in the 1999 regulations.

C. Did the trial court properly find that CenturyTel did not provide long-distance services?
The trial court's dismissal of CenturyTel was based in part on its review of the prison *343 service contract entered into between Washington State and the telephone companies, including CenturyTel, Qwest, and Verizon, that Judd provided in support of its claims. The contents and validity of the contract are not disputed by the parties.
Judd claimed the contract, which contained a preamble noting that the parties to the contract would provide local and long distance telephone service, created an issue of fact. CenturyTel argued that although the contract made one general reference to the types of service to be provided by all companies, it is abundantly clear from the rest of the contract that CenturyTel only contracted to provide local service. Relying on its review of the undisputed terms of the prison contract, the trial court properly concluded that claims against CenturyTel should be dismissed because CenturyTel provided only local telephone service to the prisons. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.1998) ("a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies"). Accordingly, the dismissal of CenturyTel on this additional ground is affirmed.

IV. CONCLUSION
We affirm the Court of Appeals decision that RCW 80.36.510.,.520, and .530 only provide a cause of action for violation of WUTC regulations. We also affirm the Court of Appeals decision that Judd may not challenge the validity of the WUTC regulations without complying with the APA because Judd sought both money damages and injunctive relief. We do not decide whether Judd's claim would qualify as a suit for "money damages only" and therefore could be brought without joining the WUTC as a party, if the claim for injunctive relief had been abandoned. Finally, we agree with the Court of Appeals conclusion that the trial court did not err in dismissing the claims against CenturyTel because CenturyTel did not provide long distance operator services.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ.
SANDERS, J. (dissenting).
I disagree with the majority's holding that RCW 80.36.510 does not create a cause of action under the Consumer Protection Act (CPA) independent from claims based on violations of disclosure regulations promulgated by the Washington Utilities and Transportation Commission (WUTC).[1] Majority at 339, 342. The plain language of RCW 80.36.510 and RCW 80.36.530 dictates the opposite result, namely that section .510 has independent legal force and a violation of that section gives rise to a CPA cause of action under section .530.
"[E]ach provision of a statute should be read together (in para materia) with other provisions in order to determine the legislative intent underlying the entire statutory scheme." State v. Chapman, 140 Wash.2d 436, 448, 998 P.2d 282 (2000). This is buttressed here by the fact that RCW 80.36.510,.520, and .530 were enacted together in 1988. LAWS OF 1988, ch. 91, §§ 1-3, codified at RCW 80.36.510,.520, and .530.
RCW 80.36.510 provides:
The legislature finds that a growing number of companies provide, in a nonresidential setting, telecommunications services necessary to long distance service without disclosing the services provided or the rate, charge or fee. The legislature finds that provision of these services without disclosure to consumers is a deceptive trade practice.
Consistent with this declaration, RCW 80.36.520 directs the WUTC to promulgate regulations requiring telecommunications companies to make "appropriate disclosure to consumers of the provision and the rate, charge or fee of services provided." To ensure those companies take seriously their *344 disclosure obligation, RCW 80.36.530 provides:
In addition to the penalties provided in this title, a violation of RCW 80.36.510, 80.36.520, or 80.36.524 constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act. Acts in violation of RCW 80.36.510, 80.36.520, or 80.36.524 are not reasonable in relation to the development and preservation of business, and constitute matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. It shall be presumed that damages to the consumer are equal to the cost of the service provided plus two hundred dollars. Additional damages must be proved.
This court has declared that "[w]here the Legislature specifically defines the exact relationship between a statute and the CPA, this court will acknowledge that relationship." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 787, 719 P.2d 531 (1986). That is precisely what the legislature has done here. RCW 80.36.530 plainly declares "a violation" of RCW 80.36.510 or RCW 80.36.520 "constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act." Thus, RCW 80.36.510 has legal effect independent of RCW 80.36.520.
Looking then to RCW 80.36.510, common sense dictates the substantive provision of that section that may form the basis for "a violation" is the statement that providing long distance service in a nonresidential setting without disclosing to consumers service and rate information "is a deceptive trade practice." RCW 80.36.510. To that extent, reading RCW 80.36.510 together with RCW 80.36.530, it is clear that providing such services without disclosure, see RCW 80.36.510, "constitutes an unfair or deceptive act in trade or commerce in violation of ... the consumer protection act," RCW 80.36.530. Thus, a total failure to disclose service and rate information to consumers, as alleged in Judd's complaint, constitutes a violation of RCW 80.36.510, actionable under the CPA. See RCW 80.36.530. Such an interpretation is not only based on a plain reading of the statute but is also necessary to give meaning to the cross-reference in RCW 80.36.530 to RCW 80.36.510. See City of Seattle v. Dep't of Labor & Indus., 136 Wash.2d 693, 698, 965 P.2d 619 (1998) (recognizing courts must interpret statutes to give effect to all language used, rendering no portion meaningless or superfluous).
Nonetheless the majority characterizes RCW 80.36.510 as a mere indication of the legislature's findings. See majority at 6. Certainly the first statement in that section  "[t]he legislature finds that a growing number of companies provide, in a nonresidential setting, telecommunications services necessary to long distance service without disclosing the services provided or the rate, charge or fee"  appears to be a factual determination. But the second statement  "[t]he legislature finds that provision of these services without disclosure to consumers is a deceptive trade practice"  is a legal conclusion and not a factual finding. And because RCW 80.36.530 states a violation of RCW 80.36.510 constitutes a violation of the CPA, this court must give effect to the second statement.
In addition, the majority's interpretation renders meaningless RCW 80.36.530's declaration that "a violation of RCW 80.36.510... constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act." By extension it also fails to give effect to RCW 80.36.510's statement that "provision of these services without disclosure to consumers is a deceptive trade practice." RCW 80.36.510. Under the majority's interpretation, the legislature was apparently mistaken when it stated that a violation of RCW 80.36.510 is actionable under the CPA. Unlike the majority, I am unwilling to engage in such judicial second-guessing.
In sum, providing long distance telephone service in a nonresidential setting without disclosing to consumers service and rate information violates RCW 80.36.510, which in turn gives rise to a cause of action under the CPA. See RCW 80.36.530. I would reverse the trial court's grant of summary judgment on this issue and remand to the *345 trial court to permit Judd to try to establish a violation of RCW 80.36.510.
I dissent.
NOTES
[1] RCW 80.36.510 provides, in full: "The legislature finds that a growing number of companies provide, in a nonresidential setting, telecommunications services necessary to long distance service without disclosing the services provided or the rate, charge or fee. The legislature finds that provision of these services without disclosure to consumers is a deceptive trade practice."
[2] RCW 80.36.520 provides: "The utilities and transportation commission shall by rule require, at a minimum, that any telecommunications company, operating as or contracting with an alternate operator services company, assure appropriate disclosure to consumers of the provision and the rate, charge or fee of services provided by an alternate operator services company." RCW 80.36.520 defines an AOS company as "a person providing a connection to intrastate or interstate long-distance services from places including, but not limited to, hotels, motels, hospitals, and customer-owned pay telephones."
[3] Although RCW 80.36.530 references violations of section .524 in addition to sections .510 and .520, the proper interpretation of section .524 is not an issue in this case. RCW 80.36.530 also sets the amount of damages for disclosure violations at "the cost of the service provided plus two hundred dollars." Plaintiffs must prove any additional damages.
[4] Judd correctly notes that the heading "legislative finding," applied to RCW 80.36.510 by the Code Reviser, has no legal effect.
[1] I agree with the majority that petitioners (Judd) may not challenge the WUTC's disclosure regulations in this non-Administrative Procedure Act, chapter 34.05 RCW, proceeding. Majority at 342. I also agree the trial court did not err by dismissing Judd's claims against CenturyTel Telephone Utilities, Inc. Id. at 343.