[No. 43642.    En Banc.    August 12, 1976.]

WASHINGTON STATE COMMERCIAL PASSENGER FISHING VESSEL ASSOCIATION, *Respondent*, v. THOR TOLLEFSON, ET AL, *Appellants.*

WASHINGTON KELPERS ASSOCIATION, *Respondent*, v. THOR TOLLEFSON, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *James M. Johnson, Assistant,* for appellants.

*Richard W. Pierson* (of *Thom, Mussehl, Navoni, Hoff, Pierson & Ryder*), for respondents.

ROSELLINI, J.—This declaratory judgment action was brought to obtain a ruling that certain fishing regulations promulgated by the Department of Fisheries for a period beginning June 15, 1974, were invalid. The Thurston County Superior Court found as a fact that the regulations in question were adopted solely as a result of the decision by Federal District Judge George C. Boldt, Western District of Washington at Tacoma, in *United States v. Wash-*

*ington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, ............L. Ed. 2d ............, 96 S. Ct. 877 (1976), and not "in furtherance of" RCW 75.08 *et seq.,* the statutes defining the powers and duties of the Director and the Department of Fisheries. Upon this finding, the court concluded that the regulations were beyond the authority of the Director.

The court also held the regulations invalid on other grounds.

It is acknowledged that the regulations in question have since been superseded and are no longer of any force or effect. The Director, however, urges the court to consider the question whether the powers conferred in the cited statute include the power to regulate fishing in the waters under its jurisdiction with the object of making a greater number of fish available to the Indians at their usual and customary fishing grounds, in compliance with the order of Judge Boldt in the referenced decision.

■ Statements of counsel upon oral argument to this court indicated that regulations which have since been promulgated are more acceptable to the Commercial Passenger Fishing Vessel Association (the only respondent participating in the appeal), from which it might be inferred that future litigation between these parties upon this question may not be threatened. But the Director maintains that the question of his authority to allocate fish in response to the federal court decision is a recurring one, of vital importance to his department and to the people of the state of Washington, which needs resolution. He calls our attention to instances in which this court has proceeded, in cases otherwise moot, to consider questions of substantial public interest, upon which an authoritative determination was needed for the future guidance of public officers, and which were of a recurring nature. Examples of such cases are *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 532 P.2d 614 (1975); *Sorenson v. Bellingham* , 80 Wn.2d 547, 496 P.2d 512 (1972); *In re Elliott,* 74 Wn.2d 600, 446 P.2d 347 (1968),

and *National Elec. Contractors Ass'n v. Seattle School Dist. 1*, 66 Wn.2d 14, 400 P.2d 778 (1965).

While each of these elements is to be found here, there are other considerations which make it undesirable that we treat this case as an exception to the general rule that the court will not render advisory opinions. In *In re Elliott, supra,* we recognized that one of the important factors deterring the courts from issuing advisory opinions is the risk that the question may not have been adequately developed or argued. Here, vital questions inherent in the case have not been raised, and much less argued. In all the cases where this court has rendered advisory opinions, the question decided has been adequately briefed and vigorously argued. In *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 492 P.2d 1012 (1972), the importance of adequate briefs and arguments was also noted. And in *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 558, 413 P.2d 972 (1966), we said that before an advisory opinion will be rendered, the proceedings must be "advanced with sufficient militancy to engender a thorough research and analysis of the major issues."

The questions presented here are indeed serious and involve a conflict between the state and federal courts in this jurisdiction. Inherent in the superior court's conclusions was a theory that the federal court could not make an effective order which would place upon an agency of the state a mandatory duty which was not within its statutory powers. The court expressed the belief that the order was not intended to create such a duty. Nevertheless, the order of the federal court by its terms imposes on the state an affirmative duty to make a designated portion of the fish in the waters of the state available to the treaty Indians who were parties to that action.

The parties to this appeal have chosen to treat the case as though the questions that seemed paramount to the trial court were not necessarily involved. The Director argues that the statutory grant of power is broad enough to permit him to manage the fish for purposes other than

conservation,[1] although he does not suggest that his department has any need for such additional powers except to meet the demands of the federal court order.

He also argues that in exercising the power to manage the fish for conservation purposes, he can consider the increased Indian fishing resulting from the federal court decision as a "mortality factor." This argument, however, does not take into account the fact that in making more fish available in the inland waters, as his regulations were designed to do, he was in fact contributing to the same mortality factor. He does not suggest that he would have any reason to increase fish mortality, absent a statutory or court-ordered duty to do so.

The Director does not argue the question whether, assuming his powers do not include the power to allocate fish for purposes other than conservation, he can nevertheless be forced to regulate the taking of fish for such purposes by court order. The respondent assumes that the Director has no such power or duty but offers no authorities in support of the court's theory.

To answer this question, we would be called upon to consider further the question whether a court may order a legislative body to enact a law or regulation (remembering that, in promulgating its regulations, the Department of Fisheries is exercising a delegated power of the legislature and noting that the order is directed to the state itself), and particularly whether a federal court can order a state legislative body to take affirmative action.[2] Also, can a court properly direct an administrative agency's exercise of its discretionary powers?

Other questions which inhere in the resolution of this

---

[1] See *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975), to the contrary.

[2] A related question is whether the Indian treaties contain any language which indicates an agreement on the part of the United States or its successors in interest to take affirmative action to make fish available at Indian fishing grounds. This is a question not dealt with in the federal court opinion, although the court's order would seem to reflect a finding that the language of the treaties was open to that interpretation.

complex problem arise. For example, was the federal court acting within its proper jurisdiction when it held that the treaty Indians are entitled to a specified percentage of the fish to be found in the waters of this state, or was it, under the guise of interpreting a treaty, actually either modifying or implementing the same?[3] If not, must the courts of this state nevertheless honor the decision and enforce its order, or may they with impunity disregard those portions which they deem to be implementations or alterations?

Another question not considered in the briefs arises from the fact that this court has itself interpreted one of the treaties in question and has arrived at a conclusion as to its meaning which differs from that of the federal court. *Department of Game v. Puyallup Tribe, Inc.*, 86 Wn.2d 664, 548 P.2d 1058 (1976). To which of these interpretations must the state agency respond? The resolution of this question cannot come from this court or from the federal district court, if no definitive authority upon the subject exists. It must come from a higher court whose decisions are binding upon both of us. In short, this dilemma can be resolved only by the Supreme Court of the United States, which, we understand, has been asked to take jurisdiction of the cases involved and settle the question.

Inasmuch as serious and controlling questions necessarily involved in any determination of the Director's powers and duties with respect to the federal court order have been

---

[3]The general rule appears to be that only the Congress can perform these functions. *See* 87 C.J.S. *Treaties* §§ 9, 15, 25 (1954); in *The Amiable Isabella*, 19 U.S. (6 Wheat.) 1, 71, 5 L. Ed. 191 (1821), where the court was asked to supply an omission in a treaty, Mr. Justice Story said:

> In the first place, this court does not possess any treaty-making power. That power belongs by the constitution to another department of the government; and to alter, amend or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be, on our part, an usurpation of power, and not an exercise of judicial functions.

*See* S. Crandall, *Treaties, Their Making and Enforcement* (2d ed. 1916); and *see Department of Game v. Puyallup Tribe, Inc.*, 86 Wn.2d 664, 548 P.2d 1058 (1976).

ignored in the briefs, a gratuitous opinion would be inappropriate and ill-advised.

Taking into account the fact there is an imminent possibility that the United States Supreme Court will speak to one or more of these questions, such an opinion would also be premature.

We therefore decline to retain jurisdiction. The appeal will be dismissed.

HUNTER and WRIGHT, JJ., concur.

STAFFORD, C.J., and HAMILTON, J., concur in the result.

UTTER, J. (dissenting)—In legal controversies involving the validity of fishing regulations, the time between action and effect is usually so compressed that the issues are moot before the appellate process can be fully utilized. This was true in the present case. It is therefore of critical importance for this court to resolve issues that are likely to arise again, if we can, consistent with our earlier decisions. The majority recognizes all the elements exist in this case to justify this court resolving the issues presented, even if the case is moot. See Hartman v. State Game Comm'n, 85 Wn.2d 176, 532 P.2d 614 (1975). It refuses, however, to consider important issues involved in this appeal, raised by the parties and discussed in the briefs, stating, "vital questions inherent in the case have not been raised, and much less argued." I am completely unable to understand how this can justify our refusal to decide those issues which are fully briefed and properly before us, and which do not require consideration of the additional, peripheral questions raised by the majority. The fishermen of this state and the Department of Fisheries deserve whatever assistance this court can give them by clarifying issues likely to arise in future cases. This is particularly true where the lower court has ruled incorrectly, as I believe it has.

Assuming the Director is bound by the court decrees requiring the State to provide certain fish to Indians, the issue presented is whether he has the authority under the applicable statutes to establish management regulations over other fisheries more completely within the control of

the State. The trial court erroneously concluded certain regulations promulgated by the Director were outside his authority. The court erred by failing to consider the full statutory authority of the Director and did not consider at all his specific authority to promulgate regulations. The trial court looked only to the authority of the Director specified in RCW 75.08.020, which states in part: "The director shall devote his time to the duties of his office and enforce the laws and regulations of the director relating to propagation, protection, conservation, preservation, and management of food fish and shellfish." Additional authority is found in RCW 75.08.080, which provides:

The director shall investigate the habits, supply and economic use of, and classify, the food fish and shellfish in the waters of the state and the offshore waters, and from time to time, make, adopt, amend, and promulgate rules and regulations as follows:

. . .

(2) Specifying and defining the areas, places, and waters in which the taking and possession of the various classes of food fish and shellfish is lawful or prohibited.

. . .

(6) The fixing of the size, sex, numbers, and amounts of the various classes of food fish and shellfish that may be taken, possessed, sold, or disposed of.

The Director's authority to control the increased Indian fishery is severely restricted both by our decisions and those of the federal courts. See *Department of Game v. Puyallup Tribe*, 414 U.S. 44, 38 L. Ed. 2d 254, 94 S. Ct. 330 (1973); *State v. James*, 72 Wn.2d 746, 435 P.2d 521 (1967). If the Director is unable to manage Indian treaty fishing, which is the subject of federal court decisions, and non-Indian fishing as well, due to the trial court's ruling in this case, the result is a complete lack of proper management leading to over-fishing of the resource. To prevent this he must be able to promulgate regulations in the one area in which he can still exercise control.

The words "conservation" and "management" in the applicable statutes are broad enough to encompass the princi-

ples of allocation embodied in the challenged regulations. Allocation is an important factor in the conservation of fish runs. Where a resource is not presently plentiful enough to satisfy all needs, a restriction on withdrawal must be instituted in order to conserve the renewable resource and insure its availability in the future.

I dissent from the majority's refusal to resolve important issues likely to arise in future litigation. I would reverse the judgment of the trial court and affirm the action of the Director.

BRACHTENBACH and HOROWITZ, JJ., and WIEHL, J. Pro Tem., concur with UTTER, J.

Petition for rehearing granted November 4, 1976.