[Nos. 31089-5-I; 31090-9-I; Division One. October 3, 1994.] 31124-7-I; 31135-2-I.

*In the Matter of the Welfare of* J.H., et al.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant,* v. S.H., *Respondent.*

888

*Christine O. Gregoire, Attorney General,* and *Trisha L. McArdle, Assistant,* for appellant.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for respondent.

*Michael Mirra, Carol Vaughn,* and *Lori Salzarulo,* amici curiae.

BECKER, J. — At issue is the power of a juvenile court to order the Department of Social and Health Services to provide unbudgeted funds to house a homeless mother and her four dependent children who may otherwise be subject to placement in foster care.

The Department initiated the dependency proceedings in January 1992, based on allegations of the father's sexual misconduct with the 7-year-old girl (his stepdaughter). The court entered a shelter care order permitting the children to live with the mother pending further hearing. The father moved out. Since his income now had to support two residences, and the landlord had raised the rent of their apartment, economics forced the mother and the children to move into a temporary shelter. At this time the Department provided a number of services to the family including: a sexual deviancy evaluation of the father and supervised visits between him and the children; assistance with shoes and clothing; day care before and after school; respite care on the weekends; a drug/alcohol evaluation of the mother and referral to Alcoholics Anonymous; a literacy tutor for the mother; individual counseling for two of the children; and an AFDC (Aid to Families with Dependent Children) grant to the mother of $683 per month and $317 per month in food stamps. The Department's caseworker began to work with a housing specialist at the shelter. With their help, the mother completed and submitted to the Seattle Housing Authority an application for a section 8 housing certificate.

The processing of the application did not go smoothly. The Housing Authority twice requested additional information about the family's rental history. For some reason it was not provided and the Housing Authority closed the mother's application. As a result, the shelter told the mother, who by then had lived there with her children for 4 months, that she would have to leave by the end of July unless she had a concrete plan in place for more permanent housing.

On May 20, 1992, the Juvenile Court held a disposition hearing after the parents agreed to an order of dependency.

The mother asked the court to order the Department to provide a cash stipend to enable her to rent an apartment. She was concerned that the children would have to be placed in foster care if the family had nowhere to go by the end of July. The Department caseworker agreed it was in the children's best interests to leave the cramped and stressful shelter, if possible, and move to more stable housing with their mother, but she opposed the request for a cash stipend as unnecessary and unauthorized. The court blamed the Department for allowing the application to the Housing Authority to get derailed, commenting that it was an extreme situation in which "the Department had just plain dropped the ball". The court entered a disposition order providing in relevant part:

> 6. DSHS-DCFS is to take immediate and active steps to assist the mother in applying for public housing. These steps shall take into account the mother's illiteracy and possible developmental disability. The steps taken shall make every reasonable effort to avoid foster care placement of the children and alleviate the psychological and emotional distress of the children caused by their homelessness.
>
> 7. If no concrete housing plan exists by July 28, 1992, then DSHS-DCFS is to assist the mother in securing private housing by providing funds to cover first and last month's rent, damage deposit and a credit check fee to the extent that any such expenditure is necessary. The amount to be provided shall not exceed $1,200.

Paragraph 7 is the order from which the Department presently appeals.

## I

Initially, we consider the mother's request to dismiss the Department's appeal as moot. On July 28, the court learned that the Department had successfully assisted the mother in renewing her application for section 8 housing and she would likely receive housing in late August. The shelter agreed not to evict the family now that there was a concrete plan for housing. Accordingly, the court suspended paragraph 7. Further developments included a contested hearing on October 26-27, 1992, resulting in the removal of all four children from the mother's custody as a result of repeated

violations of the court's earlier no contact order between the children and the father.

■ "It is a general rule that, where only moot questions or abstract propositions are involved, or where the substantial questions involved in the trial court no longer exist, the appeal, or writ of error, should be dismissed." *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). In light of the removal of the four children from custody of both parents, it is reasonable to conclude paragraph 7 will not be reactivated and that our decision will not affect this family. But whether the juvenile court has authority to order the Department to provide housing funds is an issue that has been raised in dependency proceedings at least 15 times in the past year, according to the Department. Future guidance to public officers is desirable. *Hart v. Department of Social & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

We proceed to decide this case because its circumstances involve matters of continuing and substantial public interest. *Hart*, at 447. The completeness and quality of briefing allays any concern that mootness has undermined the zeal of either side's advocacy. *See Washington State Comm'l Passenger Fishing Vessel Ass'n v. Tollefson*, 87 Wn.2d 417, 419, 553 P.2d 113 (1976).

## II

■■ We next consider the mother's assertion that the general statutes governing the Department create an entitlement to cash grants of the type ordered here. Under RCW 74.13, the Department "shall have the duty to provide child welfare services", defined as:

> public social services . . . which strengthen, supplement, or substitute for, parental care and supervision for the purpose of:
>
> . . . .
>
> (2) Protecting and caring for homeless, dependent, or neglected children;

RCW 74.13.020. This general duty is an example of a statutory policy statement that does not give rise to enforceable rights. *Aripa v. Department of Social & Health Servs.*, 91 Wn.2d 135, 139, 588 P.2d 185 (1978). RCW 74.13.031 goes on

to mandate a wide array of specific services, including investigating complaints of neglect and abuse, offering family reconciliation services, monitoring out-of-home placements, and developing a recruiting plan for foster homes. Nowhere in the child welfare services statutes does the Legislature specifically obligate the Department to provide housing assistance money and we hold that the statutes create no such entitlement.

As to the family preservation services act (FPSA), RCW 74.14C, the Legislature's explicit language is dispositive:

> Nothing in this chapter shall be construed to create an entitlement to services nor to create judicial authority to order the provision of family preservation services to any person or family where the department has determined that such services are unavailable or unsuitable or that the child or family are not eligible for such services.

RCW 74.14C.005(3).

 Also unpersuasive is the mother's argument that the State has an enforceable constitutional obligation to provide her with funds for housing. Unquestionably, parents have a fundamental liberty and privacy interest in the care and custody of their children. *In re J.B.S.*, 123 Wn.2d 1, 863 P.2d 1344 (1993). But the constitution does not guarantee family unity at state expense. *Bedford v. Sugarman*, 112 Wn.2d 500, 516, 772 P.2d 486 (1989); *Black v. Beame*, 550 F.2d 815 (2d Cir. 1977)

### III

A closer question is whether the court has authority to enter the disputed order pursuant to its exclusive original jurisdiction of all dependency proceedings. RCW 13.04.030(2); *In re Marriage of Perry*, 31 Wn. App. 604, 608, 644 P.2d 142 (1982). Upon entering an order of dependency, the juvenile court must enter an order of disposition that either provides a program of services making it possible for the children to remain at home safely, or places them out of the home. RCW 13.34.130(1).[1]

---

[1]"If, after a fact-finding hearing pursuant to RCW 13.34.110, . . . it has been proven . . . that the child is dependent . . . the court shall enter an order of disposition pursuant to this section.

The Department contends the court's order requires the Department and its employees to act in violation of the budget and accounting act, specifically RCW 43.88.130 and .290, and the Washington State Constitution, article 13, section 4. Appropriations for the Department in the 1991-1993 biennial budget contain no specific grants for housing assistance as part of the Department's child welfare services. The budget specifies that the Department is to use its appropriations solely for programs expressly authorized in the appropriations bill. Laws of 1991, 1st Ex. Sess., ch. 16, § 201.

The mother contends that the court must be able to draw upon public funds, notwithstanding the lack of a specific appropriation, in order to carry out its responsibility as parens patriae to act in the best interest of the children. She points out that under RCW 13.34.130(1) it is the court's responsibility to ensure that reasonable efforts are made to prevent the need for removal of the children from their home. It is absurd, she argues, that a court should be powerless to act until the housing situation of children, whose mother is an adequate parent in other respects, becomes so desperate that the court must agree to let the Department place them in foster care. These arguments persuaded the court to affirm similar orders of housing assistance in *In re Nicole G.*, 577 A.2d 248 (R.I. 1990).

"Implicit in all of the relevant statutes is a legislative intent that the state shall be responsible for the welfare of

---

"(1) The court shall order **one** of the following dispositions of the case:

"(a) Order a disposition other than removal of the child from his or her home, which shall provide a program designed to alleviate the immediate danger to the child, to mitigate or cure any damage the child has already suffered, and to aid the parents so that the child will not be endangered in the future. In selecting a program, the court should choose those services that least interfere with family autonomy, provided that the services are adequate to protect the child.

"(b) Order that the child be removed from his or her home and ordered into the custody, control, and care of a relative or the department of social and health services or a licensed child placing agency for placement in a foster family home or group care facility[.] . . . An order for out-of-home placement may be made only if the court finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home . . . specifying the services that have been provided to the child and the child's parent[.]" (Boldface ours.) RCW 13.34.130(1).

children in its custody." *In re Feldman*, 94 Wn.2d 244, 250, 615 P.2d 1290 (1980). In keeping with the statement of legislative policy found in RCW 13.34.020,[2] a dependency court has an obligation to adopt a program that will "least interfere with family autonomy". *In re J.B.S.*, 123 Wn.2d 1, 12, 863 P.2d 1344 (1993).

On the other hand, "[t]he decision to create a program as well as whether and to what extent to fund it is strictly a legislative prerogative." *Pannell v. Thompson*, 91 Wn.2d 591, 599, 589 P.2d 1235 (1979). Despite the court's broad powers to decide matters affecting its wards, including these four children, the court must limit its incursion into the legislative realm in deference to the doctrine of separation of powers. *In re Juvenile Director*, 87 Wn.2d 232, 245, 552 P.2d 163 (1976). The mother's argument that expenditures for housing assistance are more cost effective in the long run than placing children in foster care is for the Legislature to consider. The court's order requiring the Department to provide up to $1,200 in cash to secure private housing for this family in order to avert the possibility of foster home placement not only presumes the availability of $1,200 that the Legislature has not appropriated,[3] but also presumes the court's ability to administer an open-ended housing assistance program for similarly situated families.[4] Orders in dependency cases are reviewed for abuse of discretion. *In re A.C.*, 74 Wn. App. 271, 275, 873 P.2d 535 (1994). In the absence of a specific appropriation or statutory

---

[2]RCW 13.34.020 states, in part:

"The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized."

[3]The court acknowledged this when the mother's attorney asked "to have this pot of money set aside", by saying, "Well, the pot of money doesn't exist anywhere".

[4]The ensuing record demonstrates that administrative complexity sprouts quickly from an order in the nature of an appropriation, for the parties at the next hearing wanted the court to decide such issues as what would happen to the $1,200 if the landlord only demanded a first month's deposit, and whether the court would also order payment of moving expenses.

entitlement, we hold that paragraph 7 rests on untenable grounds and thus constitutes an abuse of discretion. *Seattle Times Co. v. Benton Cy.*, 99 Wn.2d 251, 261, 661 P.2d 964, 80 A.L.R.4th 322 (1983).

Our holding does not mean, as the mother suggests, that the juvenile court is obliged to ignore the reality of the connection between homelessness and dependency. The court should confront that reality when it affects the fate of the children under the court's supervision, not with the tools of appropriation and administration that are more adapted to the other branches of government, but by means of its authority as a court. The court has indisputable authority over the parties, as well as statutory authority to require that an individualized service plan proposed for a dependent child do a better job of meeting critical needs. The court has the power to compel the attendance in the courtroom of the caseworker, or his or her supervisor, or even the Secretary of the Department, as frequently as necessary until the agency acts with the urgency and effectiveness that the particular needs of the children demand.

## IV

■ The mother argues that the order to make cash payments derives from the court's inherent contempt powers and is designed to coerce compliance or penalize noncompliance with the order to establish a concrete housing plan. We do not accept this post hoc rationalization. The order did not result from contempt proceedings duly noticed as required. RCW 7.21.030; *In re Marriage of Nielsen*, 38 Wn. App. 586, 687 P.2d 877 (1984). The order does not mention contempt. To allow a court to invoke its contempt powers by implication rather than express words would blur the distinction between a court's authority to issue an order and a court's authority to exercise its contempt powers in response to a violation of that order.[5]

---

[5]In the absence of a finding that the penalty provided under the statutory authority is inadequate, we cannot assume that the trial court was acting under its inherent power. *State v. Heiner*, 29 Wn. App. 193, 200, 627 P.2d 983, *review denied*, 97 Wn.2d 1009 (1981).

## V

 Washington Appellate Defender Association seeks attorney fees on appeal to reimburse the indigent defense fund. No equitable grounds or contract support this request. RCW 4.88.330, offered as a statutory basis, has not been applied outside the context of indigent criminal adult defendants. *See State v. Durham*, 87 Wn.2d 206, 550 P.2d 685 (1976). Accordingly, the request for attorney fees is denied.

We vacate paragraph 7 of the court's order of May 20, 1992.

GROSSE and BAKER, JJ., concur.

Review denied at 126 Wn.2d 1024 (1995).