[No. 57767-1-I. Division One. June 19, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. G.A.H., *Respondent*, THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Trisha L. McArdle, Assistant,* for appellant.

*Elaine L. Winters* (of *Washington Appellate Project*), for respondent G.A.H.

*Norm Maleng, Prosecuting Attorney,* and *Page B. Ulrey, Deputy,* for respondent State of Washington.

¶1 DWYER, J. — The King County Superior Court Juvenile Division found that 13-year-old G.A.H., an adjudicated offender, was dependent and ordered the Department of Social and Health Services (DSHS) to place G.A.H. in foster care. DSHS was not a party to the juvenile offender proceeding. DSHS argues that the juvenile court lacked the authority to order DSHS to place G.A.H. in foster care under the Juvenile Justice Act of 1977, chapter 13.40 RCW. We agree and reverse.

## FACTS

¶2 This appeal stems from juvenile court orders regarding G.A.H., a 13-year-old adjudicated offender with a history of serious mental illness. We recite only those facts necessary to describe the proceedings leading to this appeal.

¶3 In February 2006, G.A.H. was in juvenile detention pending adjudication on several charges, including an assault on his mother. A detention review hearing was held on February 2, and although DSHS was not a party to the

proceeding, the court ordered G.A.H. released to DSHS for assessment of services and a possible foster care placement. The next day, G.A.H.'s attorney made a referral to DSHS, and a social worker with DSHS' Division of Children and Family Services (DCFS) began an investigation. The DSHS caseworker assessed G.A.H. and his mother and determined that out-of-home placement through the foster care system was neither appropriate nor necessary.

¶4 On February 6, a DSHS representative appeared at G.A.H.'s next detention review hearing. DSHS argued that, in the context of a juvenile offender proceeding, the court did not have statutory authority to order foster care placement by DSHS. It also recommended that the court release G.A.H. to his mother. DSHS further informed the court that DSHS had provided and would continue to offer the family intensive family preservation services and a therapist to assist them until G.A.H. could be admitted to in-patient mental health treatment.

¶5 G.A.H.'s mother, a single parent, was not a party to these proceedings and was not represented by counsel. She did, however, testify that she was extremely concerned that her son needed more supervision than she could provide. She also urged the court to order an out-of-home placement to a facility equipped to address her son's mental health needs.

¶6 On February 8, G.A.H. entered a guilty plea. In the juvenile offender order of disposition entered that day, the court ordered G.A.H. released to DSHS for assessment and placement.

¶7 On February 10, the court amended its dispositional order to prohibit "unsupervised" contact between G.A.H. and his mother. Subsequently, on February 13, the court ordered that G.A.H. be released to DSHS for placement in foster care.

¶8 The court denied DSHS' motion to grant a stay of the order pending appellate review but certified, based on RAP 2.3(b)(4) and stipulations by G.A.H. and the prosecutor,

that "the issue of the court's authority to order DCFS to place this youth is a question of law where there is substantial disagreement and an immediate review by the Court of Appeals will materially advance the ultimate termination of the litigation."

¶9 As ordered, DSHS placed G.A.H. in foster care. G.A.H. was later transferred to a Children's Long-term Inpatient Program placement and is currently residing at a psychiatric residential treatment facility. G.A.H.'s DCFS case is closed.

¶10 While G.A.H.'s file was open, DSHS appealed the juvenile court orders and sought accelerated review,[1] which a commissioner of this court granted.

## DISCUSSION

¶11 DSHS argues that the juvenile court did not have jurisdiction to order G.A.H. placed in foster care. Respondents G.A.H. and the State of Washington, represented by the King County Prosecuting Attorney's office, concede that the court lacked statutory authority to enter the challenged ruling but contend that the decision is not appealable. Accordingly, we first address the arguments regarding appealability.

### I. *Mootness*

¶12 G.A.H. contends that the issue presented in this appeal is moot because DSHS voluntarily placed him in foster care and has now closed his file. Thus, this court cannot now grant effective relief with regard to the underlying dispute.

¶13 "A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights." *Hansen v. W. Coast Wholesale Drug Co.*, 47

---

[1] DSHS assigned error to the February 2, 2006 order of release, the February 8, 2006 order of disposition, the February 10, 2006 order amending disposition, and the February 13, 2006 order of detention and release. We review the February 13, 2006 order, deeming the provisions of the prior orders to inhere in the latter order.

Wn.2d 825, 827, 289 P.2d 718 (1955). Generally, cases presenting moot issues on appeal are dismissed. *City of Seattle v. Johnson*, 58 Wn. App. 64, 66-67, 791 P.2d 266 (1990). However, a court may address a moot issue if "matters of continuing and substantial public interest are involved." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

¶14 Three criteria must be considered when

"determining whether the requisite degree of public interest exists: (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue."

*In re Eaton*, 110 Wn.2d 892, 895, 757 P.2d 961 (1988) (quoting *In re Pers. Restraint of Myers*, 105 Wn.2d 257, 261, 714 P.2d 303 (1986)). A fourth factor, the "level of genuine adverseness and the quality of advocacy of the issues," may also be considered. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

■ ¶15 We agree that this court can provide no effective relief with respect to G.A.H. because he has been placed in a facility that meets his needs and his DCFS file is now closed. Nevertheless, we find that the proceedings below raise matters of continuing and substantial public interest. All of the elements justifying appellate review are present. First, the nature of the issue is public, as the juvenile court is often faced with releasing offenders who have serious mental health needs that may not be addressed when they are discharged from detention. Second, a decision on the juvenile court's authority to order DSHS to meet those needs will provide future guidance to public officers interacting with juvenile offenders. Third, as the King County prosecutor concedes, this is an issue that is likely to recur.[2]

---

[2] In the record, on more than one occasion, the court and G.A.H.'s counsel conveyed that, in their experience, it was not uncommon in the course of detention proceedings for the juvenile court to order DSHS to take custody of adjudicated youths whose parents were unwilling or unable to take them. *See, e.g.*, Verbatim Report of Proceedings (VRP) (Feb. 2, 2006) at 16, 19, 20-24; VRP (Feb. 13, 2006)

Fourth, despite the expedited scheduling of this appeal, the parties have skillfully briefed and argued the legal issues presented. Thus, it is appropriate for us to address the issues raised.

## II. *DSHS Is a Proper Party To Appeal This Action*

¶16 The respondents also argue that DSHS cannot appeal the juvenile court order because DSHS was not a party to the juvenile offender proceeding below. We disagree and find that DSHS may appeal this matter as an "aggrieved party" under RAP 3.1 and the Basic Juvenile Court Act, chapter 13.04 RCW.[3]

¶17 *State v. A.M.R.*, 147 Wn.2d 91, 51 P.3d 790 (2002), is directly on point. There, the court held that the State had standing to appeal from juvenile restitution orders because it was an aggrieved person under RCW 13.04.033(1).

> When the word "aggrieved" appears in a statute, it refers to " 'a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation.' " *Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 854-55, 210 P.2d 690 (1949) (quoting 4 C.J.S. *Appeal and Error* § 173b(1)).

*A.M.R.*, 147 Wn.2d at 95.

¶18 Furthermore, Washington courts have long recognized that, under some narrow circumstances, persons who were not formal parties to trial court proceedings, but who are aggrieved by orders entered in the course of those proceedings, may appeal as "aggrieved parties." For example, in *State v. Casey*, 7 Wn. App. 923, 503 P.2d 1123 (1972), a case decided before the adoption of the Rules of Appellate Procedure, a mother was allowed to prosecute an appeal of a filiation order following proceedings brought in

---

at 21. This is sufficient to establish that this is a recurring matter on which public officers need guidance.

[3] "Any person aggrieved by a final order of the court may appeal the order as provided by this section. . . . Except as otherwise provided in this title, all appeals in matters related to the commission of a juvenile offense shall be taken in the same manner as criminal cases." RCW 13.04.033(1).

the name of the State. Because the mother had a direct pecuniary interest that was adversely affected by the order, she was determined to be an aggrieved party with the right to appeal. *Casey*, 7 Wn. App. at 927.

¶19 As it has since the adoption of the Rules of Appellate Procedure (RAP) in 1976, RAP 3.1 governs this inquiry. RAP 3.1 states that "only an aggrieved party may seek review by the appellate court." An "aggrieved party" is one whose proprietary, pecuniary, or personal rights are substantially affected. *Breda v. B.P.O. Elks Lake City 1800 SO-620*, 120 Wn. App. 351, 353, 90 P.3d 1079 (2004) (attorney sanctioned by a court becomes a party to the action and as an aggrieved party may appeal the sanctions on the attorney's own behalf, but clients are not aggrieved by the imposition of sanctions against their attorneys and may not appeal the sanctions on behalf of their attorneys); *Splash Design, Inc. v. Lee*, 104 Wn. App. 38, 44, 14 P.3d 879 (2000) (attorney sanctioned under CR 11 is an aggrieved party and may appeal the sanction under RAP 3.1); *Johnson v. Mermis*, 91 Wn. App. 127, 955 P.2d 826 (1998) (attorney could appeal CR 11 and CR 37 monetary sanctions, but could not appeal the trial court's denial of his client's motion to strike the trial date, its dismissal of his client's third party claims, or its exclusion of the testimony of one of his client's witnesses as a discovery sanction); *In re Guardianship of Lasky*, 54 Wn. App. 841, 850, 776 P.2d 695 (1989) (removed guardian who was not a party to the original action could appeal the order denying fees and imposing sanctions because the order substantially affected pecuniary rights).

¶20 In this case, the juvenile court's February 13, 2006 order directly affected the rights of DSHS. DSHS was ordered to assume custodial and financial responsibility for G.A.H.'s welfare. Accordingly, DSHS is an aggrieved party and may appeal as a matter of right.

### III. *Means of Appellate Review*

¶21 The respondents also argue that DSHS should obtain review through either discretionary review under RAP 2.3(b) or a writ of mandamus. We disagree.

¶22 Discretionary review would not be proper here because the February 13, 2006 juvenile court order requiring DSHS to place G.A.H. was a final order, appealable as a matter of right. RAP 2.2(a)(1).

¶23 Likewise, DSHS would not be permitted to seek a writ under RAP 16.2. The purpose of a writ of mandamus is to compel the performance of an act that the law clearly requires of a government official, agency, or inferior court. RCW 7.16.160. Here, the juvenile court has already acted; DSHS merely seeks appellate review of that action. Furthermore, RAP 2.1(b) abolishes the process of seeking review of trial court rulings by extraordinary writs in favor of direct appeals and motions for discretionary review. A writ is an extraordinary remedy that is available only if there is no "plain, speedy and adequate remedy in the ordinary course of law." *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003); RCW 7.16.170, .300. Those circumstances are not herein present. Accordingly, this matter is properly addressed by direct appeal.[4]

### IV. *Order Compelling DSHS Placement under Chapter 13.40 RCW Is Void*

¶24 We turn now to the merits of this appeal. As the respondents concede, DSHS was not a party to G.A.H.'s juvenile offender proceeding and, therefore, the court did not have personal jurisdiction over DSHS. *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 909 P.2d 1294 (1996). The court order requiring DSHS to place G.A.H. in foster care is, therefore, void and must be reversed. *Bour v. Johnson*, 80 Wn. App. 643, 910 P.2d 548 (1996).

---

[4] G.A.H.'s related argument that the juvenile court is not adequately represented in this appeal is unpersuasive. G.A.H. advocated for the challenged orders. He is a proper party to defend those orders on appeal. His counsel has done so quite skillfully. This is not a dispute between the juvenile court judges and DSHS.

¶25 Because this is a matter of continuing and important public interest, we briefly review the respective roles of the juvenile court and DSHS in serving juvenile offenders with social service needs.

¶26 The juvenile court's authority for the adjudication, sentencing, and disposition of juvenile offenders is exclusively provided by the Juvenile Justice Act of 1977. The Basic Juvenile Court Act provides:

> The provisions of chapters 13.04 and 13.40 RCW, as now or hereafter amended, shall be the exclusive authority for the adjudication and disposition of juvenile offenders except where otherwise expressly provided.

RCW 13.04.450.

¶27 When the legislature used the word "shall," it imposed a mandatory duty. *See, e.g., State v. Bartholomew*, 104 Wn.2d 844, 710 P.2d 196 (1985). The statutory language is unambiguous. The juvenile offender provisions are the only mechanism for the disposition of offenders.

¶28 In mandating that chapter 13.40 RCW be the exclusive authority for juvenile offender proceedings, the legislature drafted the statute to provide a comprehensive framework addressing all aspects of how an offender is to be charged, prosecuted, and punished. Ch. 13.40 RCW. In order to ensure fairness and predictability, the legislature placed each criminal offense in a category and then created guidelines for the disposition of each category of offense. RCW 13.40.0357. The court's dispositional options include a standard range of confinement, a suspended disposition, a chemical dependency disposition, or, if a disposition under these other alternatives would effectuate a manifest injustice, a disposition outside the standard range. *Id.*

¶29 Chapter 13.40 RCW does not provide the court with the authority to order DSHS to place an adjudicated offender in foster care. This omission is not an oversight by the legislature. DSHS was never charged with supervising juvenile offenders released on community supervision, nor was DSHS ever required to ensure the safety of the community from juvenile offenders. RCW 13.40.020(4) (an

adjudicated offender placed on community supervision is, by definition, not in the custody of DSHS).[5]

¶30 DSHS is not a party to juvenile offender proceedings pursuant to chapter 13.40 RCW. *In re Welfare of Lowe*, 89 Wn.2d 824, 576 P.2d 65 (1978). RCW 13.04.093 makes it clear that, in juvenile offender proceedings, the county prosecutor is responsible for prosecuting the action. RCW 13.04.035 further provides that juvenile probation staff are employees of the superior court. There are only two circumstances in which DSHS has ultimate responsibility for an adjudicated juvenile offender. The first is when the offender is committed to the custody of the Juvenile Rehabilitation Administration for incarceration at a state institution. The second is when DSHS' legal custody of a dependant juvenile is established before the juvenile commits the adjudicated offense. RCW 13.40.020(5), (12); RCW 13.40.185(1).

¶31 DSHS' authority to place youth in foster care is limited to four specific circumstances: First, in conjunction with a dependency proceeding under chapter 13.34 RCW, where DSHS petitions for dependency and the court orders the child into the custody of DSHS. RCW 13.34.050, .065, .130. Second, in conjunction with a proceeding under chapter 13.32A RCW, where the court finds, and DSHS agrees, that a suitable placement is available. RCW 13.32A.170, .300. Third, when law enforcement determines that a child is at imminent risk of harm by parental action and releases the child to DSHS for placement in protective custody. RCW 26.44.050. Fourth, under chapter 74.13 RCW, when DSHS enters into a contract with the parent or parents and agrees to accept the child for placement.

¶32 In this case, the youth was neither dependent nor otherwise in the legal custody of DSHS at the time the offense was committed. None of the circumstances allowing DSHS to place a youth in foster care applied. Although no

---

[5] " 'Community supervision' means an order of disposition by the court of an adjudicated youth not committed to the department or an order granting a deferred disposition." RCW 13.40.020(4).

dependency petition had been filed, the juvenile court nonetheless found that G.A.H. met the definition of "dependent child" because the court determined that G.A.H.'s mother feared for the safety of her child and herself.

¶33 The juvenile court's finding in a juvenile offender proceeding that G.A.H. was dependent was made without the requisite authority. Whether acting through its judicial or executive branch, the State cannot infringe on a family's fundamental rights without providing due process of law. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); RCW 13.34.062, .090. This process is constitutionally compelled and is particularly important since a finding of dependency is the first step toward the termination of parental rights. The dependency statute not only requires the existence of a parental deficiency justifying intervention, but is also carefully crafted to protect the fundamental due process rights of parents and children, and to prevent the unnecessary or inappropriate breakup of the family. It imposes a number of procedural protections to ensure that a determination of dependency is correct.

¶34 The court's conclusion that G.A.H. met the definition of a "dependent child" and should be placed in foster care was the result of an inquiry not properly made in a juvenile offender proceeding. None of the requirements or safeguards applicable to the establishment of dependency or the placement of children in foster care were fulfilled. The father was not given any notice of the proceeding or an opportunity to be heard. Neither parent was either represented by counsel or provided a meaningful hearing before an unbiased fact finder where competent evidence could be presented to establish parental unfitness. Yet these protections are required for a proper finding of dependency. RCW 13.34.090. The court's order removing G.A.H. from his home and placing him in foster care was made in the absence of the fundamental protections afforded families and children and must be reversed.

¶35 Furthermore, the juvenile court's order requiring DSHS to place G.A.H. in foster care violated the separation of powers doctrine. *In re Welfare of J.H.*, 75 Wn. App. 887, 880 P.2d 1030 (1994) (court could not order expenditure of housing assistance funds even if it would be more cost effective than foster care placement, as that was an issue for the legislature to decide); *In re Dependency of A.N.*, 92 Wn. App. 249, 253-54, 973 P.2d 1 (1998) (court's well-meaning intent must still be exercised within the bounds of legislatively granted authority). The administration of DSHS' programs is an executive, not a judicial, function. The court cannot substitute its judgment for that of DSHS in areas where DSHS has been charged by law with ensuring the welfare of children. As this court previously held with respect to a juvenile court's assumption of power over DSHS, "the court must limit its incursion into the legislative realm in deference to the doctrine of separation of powers." *In re Welfare of J.H.*, 75 Wn. App. at 894, relying on *In re Salary of Juvenile Director*, 87 Wn.2d 232, 245, 552 P.2d 163 (1976).

¶36 The juvenile court had no personal jurisdiction over DSHS or G.A.H.'s parents. The juvenile court had no authority to determine that G.A.H. was "dependent" in a juvenile offender proceeding or to order DSHS to place the adjudicated offender in foster care.

¶37 This court recognizes that the juvenile court and all those involved in these proceedings sincerely endeavored to provide G.A.H. with the assistance he needs. We also share the parties' concern regarding the State's provisions for meeting the needs of children such as G.A.H. Nonetheless, the juvenile court clearly exceeded its authority and circumvented the proper statutory role of DSHS, and we are constrained to reverse the February 13, 2006 order.

¶38 Reversed.

SCHINDLER, A.C.J., and COLEMAN, J., concur.