# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>FAAFETAI T. SANTISTEBAN,<br><br>Respondent,<br><br>THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, non-party ordered to pay for services,<br><br>Appellant. | No. 87313-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In 1998, Faafetai Santisteban was committed to Western State Hospital after being acquitted as not guilty by reason of insanity. Santisteban petitioned the superior court for conditional release. The superior court granted Santisteban's petition and directed that she be released to an adult family home. But, in addition, based on the agreement of Santisteban and the Snohomish County prosecutor's office, and without affording the state Department of Social and Health Services (DSHS) notice and an opportunity to be heard, the superior court ordered DSHS to fund services that DSHS disputes it had legal authority to fund. We conclude the superior court did not obtain personal jurisdiction over DSHS and thus could not order DSHS to fund Santisteban's conditional release. We further conclude the superior court did not have appellate jurisdiction to review

an earlier DSHS determination of Santisteban's eligibility for services. We reverse and remand for proceedings consistent with this opinion.

I

Following a 1998 acquittal on criminal charges by reason of insanity, Santisteban was ordered to the care and custody of DSHS for treatment at Western State Hospital.

In November 2023, Santisteban submitted to DSHS an application for conditional release. In December 2023, a division of DSHS, Home and Community Services (HCS), made a determination that she was not functionally eligible for long term care under the "Community First Choice Residential" program. HCS's notice provided information to appeal the eligibility decision if Santisteban disagreed with the denial. The record is silent as to whether Santisteban appealed HCS's decision.

Santisteban petitioned the superior court for conditional release. The superior court scheduled a contested hearing for September 26-27, 2024. On September 18, 2024, Santisteban filed a criminal calendar note setting entry of a proposed "agreed" order for Monday, September 23, 2024. Santisteban served notice of the hearing on the Snohomish County deputy prosecutor. County prosecutors represent the State in conditional release proceedings. RCW 10.77.150(3)(b). On Friday, September 20, 2024, Santisteban filed a memorandum challenging DSHS's release planning for Santisteban and objecting to DSHS's contesting the proposed order.

At the September 23, 2024 hearing, in addition to Santisteban and the county prosecutor, an assistant attorney general appeared for DSHS. Santisteban informed the superior court that the parties—Santisteban and the county prosecutor's office—did not disagree "on the ultimate issue under [RCW] 10.77.150. And that is with the conditions and the amount of supervision laid out in the conditions of the proposed order, there's not a dispute." The parties submitted an agreed proposed order of conditional release to the superior court and requested the court enter it.

Through its counsel, DSHS indicated it was made aware of the hearing and the agreed proposed order the Wednesday before the Monday hearing. DSHS argued the proposed order directed it to pay for an adult family home that it had already determined the patient was not eligible for, it was obligated under the governing statute to pay for only inpatient care, and it was not statutorily obligated to pay for Santisteban's less restrictive care.

The superior court stated that DSHS had not moved to intervene under CR 24. The superior court ruled that "it's abundantly clear from the materials that [Santisteban] meets the criteria for a less restrictive alternative based on the findings as outlined quite thoroughly in the proposed order." In its order granting Santisteban's conditional release, the superior court ruled that "DSHS is responsible for the cost of [Santisteban's] continued commitment," which the court said "includes her conditional release to an adult family home, and ordered "DSHS via HCS to pay for all aspects of [Santisteban's] community living." The superior

court left "the ultimate source of funding to the discretion of DSHS," but found that "[HCS] should pay the cost of all aspects of this conditional release order." The superior court based this on "the parties' stipulation"—that is, Santisteban and the county prosecutor's stipulation—"that the HCS incorrectly found [Santisteban] ineligible for that funding in the first place." DSHS filed a notice of appeal, and it filed a motion in this court to stay the challenged portions of the superior court's order. A commissioner of this court granted the stay.

In this court, DSHS argues that the superior court lacked personal jurisdiction over it and so its directive to DSHS to pay for services must be reversed. DSHS further argues that the superior court lacked appellate jurisdiction to review the merits of HCS's decision about Santisteban's eligibility for long term care benefits. And, on the merits, DSHS argues that the superior court's order that DSHS must fund Santisteban's conditional release to an adult family services home is contrary to the plain language of RCW 10.77.250.

RCW 10.77.250(1) states, "[T]he department shall be responsible for all costs relating to the evaluation and *inpatient treatment* of persons committed to it pursuant to any provisions of this chapter, and the logistical and supportive services pertaining thereto except as otherwise provided by law." (Emphasis added.) DSHS argues that "inpatient treatment" means care other than in a less restrictive alternative based on the statutory language throughout chapter 10.77 RCW. Indeed, under the community behavioral health services act (see RCW 71.24.011), the director of the Washington state health care authority is directed

4

to take numerous actions associated with making behavioral health services available in the state. RCW 71.24.035(1)-(6). Among these responsibilities, the legislature has directed the health care authority to require behavioral health administrative services organizations and managed care organizations to provide the services required as part of a less restrictive alternative either under the involuntary treatment act (ITA), RCW 71.05.585, or as part of a conditional release of a person acquitted by reason of insanity, RCW 10.77.175. See RCW 71.24.035(5)(l). DSHS argues that the legislature's providing for the health care authority to contract for these services further shows that DSHS's statutory responsibility is to pay for only the inpatient care of those acquitted by reason of insanity, and not less restrictive alternatives. Because DSHS was erroneously deprived of the opportunity to be heard in the superior court, a record was never created supporting review on the merits in this court. We accordingly decline to reach the statutory limitations on DSHS's funding obligations.

II

Santisteban argues that DSHS is not an aggrieved party under RAP 3.1, and it cannot appeal as a matter of right under RAP 2.2. Because aggrieved parties may seek review if they have a pecuniary interest under RAP 3.1, and because there is a basis to grant discretionary review under RAP 2.3(b)(2), we conclude review is appropriate.

Generally, "[t]hose who are not parties to an action may not appeal." Aguirre v. AT&T Wireless Servs., 109 Wn. App. 80, 85, 33 P.3d 1110 (2001). "Washington courts have long recognized that, under some narrow circumstances, persons who were not formal parties to trial court proceedings, but who are aggrieved by orders entered in the course of those proceedings, may appeal as 'aggrieved parties.' " State v. G.A.H., 133 Wn. App. 567, 574, 137 P.3d 66 (2006). RAP 3.1 states that "[o]nly an aggrieved party may seek review by the appellant court." "An 'aggrieved party' is one whose proprietary, pecuniary, or personal rights are substantially affected." G.A.H., 133 Wn. App. at 575.

In G.A.H., G.A.H. was being held in juvenile detention, and DSHS was not a party in the detention review hearings. Id. at 570-71. At the hearings, the court ordered G.A.H. "released to DSHS for assessment of services" and ordered G.A.H. to be released to DSHS for a possible foster care placement. Id. DSHS appealed the juvenile court's orders, arguing that the court did not have authority to order DSHS to place the minor into foster care. Id. at 572. We concluded, although DSHS was not a party to the proceedings below, "DSHS may appeal this matter as an 'aggrieved party' under RAP 3.1" and the statute governing juvenile courts.[1] Id. at 574. Because "DSHS was ordered to assume custodial and financial responsibility of G.A.H.'s welfare," DSHS was an aggrieved party. Id. at 575.

---

[1] Santisteban argues that G.A.H. is distinguishable because the court interpreted RCW 13.04.033(1), which allows "[a]ny *person* aggrieved by a final order" of the juvenile court to appeal such an order. 133 Wn. App. at 574 n.3 (emphasis added). However, the court also relied on RAP 3.1, which uses the language of "aggrieved *party*." (Emphasis added.) Santisteban also asks that we overrule G.A.H. We decline to do so.

Santisteban argues that DSHS should have sought intervention in the superior court before asking this court to become involved. G.A.H. did not require DSHS to intervene before determining it was an aggrieved party entitled to appeal. And, Santisteban cites no case holding that CR 24 imposes on persons who have never been served formal notice of an action a duty to monitor a case and resort to CR 24 to avoid forfeiting a right to be heard before their rights are determined. A requirement that a nonparty, who is not given timely notice of the proceeding until they inquire, and is not involved in the day-to-day litigation, should have the foresight to know that its interests will be litigated in absentia, and thus timely intervene, is backwards.

Here, the superior court ordered DSHS to assume financial responsibility for all the expenses related to Santisteban's placement at an adult family services home. Accordingly, DSHS is an aggrieved party with a substantial pecuniary interest affected by the court's decision.

As to appealability, RAP 2.2(a) provides that "[u]nless otherwise prohibited or provided by statute or court rule," a party may appeal from only designated superior court decisions. DSHS argues it is entitled to appeal under RAP 2.2(a)(1), which permits a party to appeal from a "final judgment entered in any action or proceeding." However, a final judgment is one that settles all the issues in a case. See CR 54(a)(1) (providing that a "judgment is the final determination of the rights of the parties in the action"). Pursuant to RCW 10.77.180 and .200, the superior court has continuing jurisdiction over persons acquitted by reason of insanity until

7

they are unconditionally released. Thus, the conditional release order was not a "final judgment" because it did not constitute a final determination of Santisteban's rights, nor did it settle all the issues in the case. State v. Coleman, 6 Wn. App. 2d 507, 514-15, 431 P.3d 514 (2018) (contrasting appealable final release decision with non-appealable conditional release decision); State v. Howland, 180 Wn. App. 196, 203, 321 P.3d 303 (2014) (denial of conditional release not appealable under RAP 2.2(a)(13)); cf. In re Det. of Turay, 139 Wn.2d 379, 392-93, 986 P.2d 790 (1999) (postcommitment order not appealable final judgment because it did not constitute a final determination of rights, nor did it settle all the issues in the case); In re Det. of Peterson, 138 Wn.2d 70, 88, 980 P.2d 1204 (1999) (same). DSHS may not appeal as a matter of right under RAP 2.2(a)(1) because the superior court's conditional release order is not a "final order."[2]

In the absence of an appealable final judgment, a party seeking review is limited to discretionary review. RAP 5.1(c) states that "[a] notice of appeal of a decision which is not appealable will be given the same effect as a notice for discretionary review." Thus, when RAP 2.2(a) is not met, an appellate court may accept review if the criteria for discretionary review under RAP 2.3(b) are met. See Howland, 180 Wn. App. at 203. RAP 2.3(b)(2) allows discretionary review when the superior court has "committed probable error," and the decision "substantially

_____

[2] DSHS also argues that it has a right to appeal under RAP 2.2(a)(3), which allows a party to appeal from "[a]ny written decision affecting a substantial right in a civil case that in effect determines the actions and prevents a final judgment or discontinues the action." However, DSHS fails to show how the conditional release order prevents a final judgment or discontinues the matter.

alters the status quo or substantially limits the freedom of a party to act." Here, the superior court committed probable error in ruling on DSHS's obligations without acquiring personal jurisdiction over DSHS and affording it a reasonable time to make its appearance. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The effects prong of RAP 2.3(b)(2) is met typically "only when a trial court's order has, as with an injunction, an immediate effect outside the courtroom," in contrast to an order that "merely alters the status of the litigation itself or limits the freedom of a party to act in the conduct of the lawsuit." Howland, 180 Wn. App. at 207. Here, DSHS argues that the trial court's order imposed on DSHS a funding requirement that it contends is inconsistent with statute and unappropriated by the legislature. We are satisfied this is an "immediate effect outside the courtroom" warranting discretionary review in this case. We therefore grant discretionary review.

III

DSHS contends the challenged portions of the order are void because the superior court did not acquire personal jurisdiction over DSHS. We agree.

"[T]he general rule [is] that 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' " City of Seattle v. Fontanilla, 128 Wn.2d 492, 502, 909 P.2d 1294 (1996) (quoting Martin v. Wilks, 490 U.S. 755, 761, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989)).[3] In G.A.H., the court held that because DSHS

---

[3] In Martin, the United States Supreme Court noted that a judgment may be binding upon a nonparty if the interests of the nonparty are adequately represented

was not a party to G.A.H.'s detention review hearings, the court lacked personal jurisdiction over DSHS. 133 Wn. App. at 576. The court further reviewed the superior court's authority to act in the scope of a juvenile offender proceeding under chapter 13.40 RCW, including considering whether the court could order DSHS to take custody of a juvenile. Id. The court found that the statute did "not provide the court with the authority to order DSHS to place an adjudicated offender in foster care." Id. at 577. The court concluded that because DSHS was not a party to juvenile offender proceedings, and because none of the circumstances allowing DSHS to place a youth in foster care applied, the juvenile court had no personal jurisdiction over DSHS and no authority to order DSHS to place the adjudicated offender in foster care. Id. at 579-80.

Here, DSHS was not a party in the superior court proceedings, and there is no evidence in the record that the superior court obtained personal jurisdiction over DSHS by service of process. "A judgment is void if the court lacks jurisdiction over the parties or the subject matter." Tupper v. Tupper, 15 Wn. App. 2d 796, 801, 478 P.3d 1132 (2020). The fact DSHS's counsel appeared at the hearing scheduled for entry of the agreed proposed order does not change the analysis. Lack of personal jurisdiction by itself barred the superior court from binding DSHS, actual notice is not a substitute for valid service of process, Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 177, 744 P.2d 1032, 750 P.2d 254 (1987), and "[a] voluntary appearance does not waive any objection to the court's

by a party with the same interests. 490 U.S. at 762 n.2. None of those circumstances are present here.

10

jurisdiction," Adkinson v. Digby, Inc., 99 Wn.2d 206, 210, 660 P.2d 756 (1983). And notice of Santisteban's arguments the Friday before the Monday hearing was insufficient, because as due process case law analogously instructs, when a party is entitled to notice, the notice "must afford a reasonable time for those interested to make their appearance." Mullane, 339 U.S. at 314. Because the superior court did not have personal jurisdiction over DSHS, the portions of the September 23, 2024 order requiring DSHS to pay for Santisteban's conditional release are void.

IV

DSHS argues the superior court erred in reviewing HCS's eligibility determination without following the mandatory procedures under the Administrative Procedure Act (APA), chapter 34.05 RCW. We agree.

The APA governs judicial review of agency decisions. Burnham v. Dep't of Social & Health Servs., 115 Wn. App. 435, 438, 63 P.3d 816 (2003). The APA is the exclusive means of judicial review of an agency action, except in specific circumstances where another statute expressly authorizes a different form of review, none of which are applicable here. RCW 34.05.510.

When reviewing an administrative decision, "the superior court is acting in its limited appellate capacity, and all statutory procedural requirements must be met before the court's appellate jurisdiction is properly invoked." Seattle v. Pub. Emp't Rels. Comm'n, 116 Wn.2d 923, 926, 809 P.2d 1377 (1991). Thus, under the APA, a superior court does not obtain jurisdiction over an appeal from an agency decision unless the appealing party files a petition for review in the superior

11

court. Id. A person may file a petition for judicial review "only after exhausting all administrative remedies available within the agency whose action is being challenged." RCW 34.05.534; see also Stafne v. Snohomish County, 174 Wn.2d 24, 34, 271 P.3d 868 (2012). While there are limited exceptions to the exhaustion doctrine—futility, patently inadequate remedies, or irreparable harm—a "strong bias exists toward requiring parties to follow the statutorily prescribed administrative path before resorting to the courts." Stafne, 174 Wn.2d at 34-35.

Here, HCS, a division of DSHS, determined Santisteban was not eligible for long term care. To the extent our record shows, Santisteban did not appeal although she was provided information on HCS's appeal process. Instead, Santisteban argued before the superior court that HCS conducted an "incompetent assessment," and the superior court entered an order that, among other things, determined "HCS incorrectly found [Santisteban] ineligible for that funding in the first place." Because Santisteban failed to exhaust her administrative remedies, the superior court reviewed HCS's determination without properly obtaining appellate jurisdiction over the action. A person cannot avoid the APA's mandatory requirements by stipulating with a third party, in separate litigation, that the agency erred. We conclude the portions of the order relating to HCS's determinations are void.

We reverse paragraphs B.15-19, C.23, D.28-30, D.33, and D.34, and the last sentence of paragraph C.25 in the superior court's September 23, 2024 order, and remand for proceedings consistent with this opinion.[4]

Birk, J.

WE CONCUR:

---

[4] Santisteban argues the superior court violated her substantive due process rights by amending the conditional release order to place her in a facility that was "greater restraint" than recommended by her treatment team. In a statement of additional authority, Santisteban cites In re Detention of D.W. v. Department of Social & Health Services, in which, because of overcrowding, patients were detained under the ITA in circumstances where they received " 'no psychiatric care or other therapeutic care for their mental illness.' " 181 Wn.2d 201, 206, 332 P.3d 423 (2014). This kind of detention was not based on "medical justification for involuntarily detaining that individual patient outside of a certified facility," but on "generalized lack of room at certified facilities." Id. at 211. In rejecting this kind of detention, the court explained, "Anyone detained by the State due to 'incapacity has a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition.' " Id. at 208 (internal quotation marks omitted) (quoting Ohlinger v. Watson, 652 F.2d 775, 778 (9th Cir.1981)). Because we resolve this appeal on procedural grounds, our opinion should not be taken as addressing the medical justification necessary for commitment and release to a less restrictive alternative.

Santisteban also filed a motion to supplement the record to provide a declaration regarding the new facility. We deny the motion to supplement the record and note that the declaration would not have changed our analysis of the challenged portions of the September 23, 2024 order.