[No. 41171-3-I.   Division One.   August 31, 1998.]

*In the Matter of the Dependency of* A.N.

*Christine O. Gregoire, Attorney General,* and *Noella A. Rawlings, Assistant,* for appellant.

*Judith Baskin* and *Jennifer E. Horwitz* of *The Defender Association;* and *David B. Girard* of *Columbia Legal Services,* for respondent.

BAKER, J. — This case involves a juvenile court struggling within its statutory bounds to address the needs of a 16-year-old dependent child who repeatedly runs from treatment facilities. The court ordered the State to place the child in a locked facility, reasoning it was authorized to do so by a licensing statute and because the child consented. The court's reliance on the statute and child's waiver is, however, misplaced. Because we conclude that courts have no authority to place dependent children in locked facilities, we reverse.

## FACTS

There is no dispute that A.N. requires intensive inpatient therapeutic treatment for mental health and substance abuse problems. The Department of Social and Health Services (DSHS) became involved with A.N. in 1995. Like many dependent children, A.N. has been provided treatment at several facilities, but she has run from each and has demonstrated an unwillingness to complete programs.

As a result, A.N.'s parents, as well as professionals famil-

iar with her case, concluded A.N. should be placed in a locked facility. There are no locked facilities for dependent children in Washington, and DSHS does not contract with secure facilities outside the State. DSHS recommended several programs that were not locked, but from which A.N. would have greater difficulty running. However, the experts disagreed that such facilities would adequately serve A.N. Instead, they recommended A.N. be placed in a secure treatment facility in Utah, the Provo Canyon School. A.N. consented to be placed at the school and agreed to a 48- to 72-hour "cooling off" period, during which time she waived her constitutional rights to be released upon demand.

DSHS has consistently maintained it has no statutory authority to place dependent children in a locked facility. The trial court disagreed. The court acknowledged the authority to place dependent children resided in the State, but found it had review power to "*proscribe*, rather than *prescribe*," placement it finds does not meet the best interests of a child. The court exercised this perceived authority and rejected the department's treatment options. The court reasoned that because (1) locked facilities are not specifically excluded from the statutory definition of group care, and (2) the Legislature has not addressed the situation of a dependent child consenting to locked placement, DSHS could place A.N. in a locked site.

The court approved placement at Provo Canyon, finding it was the only facility presented by the parties that met all of A.N.'s needs. It also found that sufficient time did not exist for DSHS to explore other options. Therefore, the court essentially ordered placement at Provo Canyon.

DSHS appeals, contending the court erred by finding it had statutory authority to order placement of a dependent child at a locked facility.

## DECISION

The primary purpose of a dependency proceeding is for the court to order remedial measures to promote family unity and to alleviate the problems that caused the State's

intervention.[1] A court's placement decision is discretionary and will be overturned only upon a showing of abuse of discretion.[2] In determining placement, the best interests of the child are the court's paramount concern.[3]

The court's placement decision here is based on its interpretation of statutes. Because the construction of a statute is a matter of law, we review the court's decision de novo.[4]

The dependency provisions of the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship (Act), RCW 13.34, authorize a trial court to order a dependent child placed in "a foster family home or group care facility licensed pursuant to chapter 74.15 RCW or in a home not required to be licensed pursuant to chapter 74.15 RCW."[5] A "group care" facility is "an agency, other than a foster-family home, which is maintained and operated for the care of a group of children on a twenty-four hour basis."[6] An "agency" is any entity that receives children "for control, care, or maintenance outside their own homes, or which places, arranges the placement of, or assists in the placement of children, . . . for foster care or . . . adoption[.]"[7]

Specifically excluded from the definition of agency are individuals and entities ranging from relatives of the child to licensed physicians or lawyers.[8] Secure facilities are not on this list. The trial court relied on this absence to

---

[1]*In re A.W.*, 53 Wn. App. 22, 27, 765 P.2d 307 (1988), *review denied*, 112 Wn.2d 1017 (1989).

[2]*In re Dependency of A.C.*, 74 Wn. App. 271, 275, 873 P.2d 535 (1994).

[3]*In re Dependency of J.B.S.*, 123 Wn.2d 1, 10, 863 P.2d 1344 (1993). *See* Laws of 1998, ch. 314, § 1 (adding to the introductory declaration of RCW 13.34.020 the following language: "In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern.").

[4]*Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 809, 947 P.2d 721 (1997).

[5]RCW 13.34.130(1)(b).

[6]RCW 74.15.020(3)(a).

[7]RCW 74.15.020(3).

[8]RCW 74.15.020(4)(a)-(p).

conclude it had statutory authority to authorize a dependent child to be placed in a locked facility, at least where the child consents.

However, the definitions upon which the court relies appear in a licensing statute, RCW 74.15.[9] The Legislature did not demonstrate an intent to apply the definitions in a way that expands a court's limited authority to place children under RCW 13.34.130(1)(b). For example, the dependency statute does not define the term "secure facility."[10] Moreover, the legislative history preceding the adoption of the Act indicates a movement away from the earlier practice of locking up dependent children.[11] It is thus no mistake that the definition of "secure facility" is found not in the dependency provision, but rather in the FRA, which places strict limits on the duration of placement in a locked facility.[12] This also explains why DSHS does not contract with locked facilities to treat dependent children.

■■ For these reasons, we hold the Act does not authorize a court to order placement of a dependent child in a locked facility. This result does not change when, as here, the child agrees to such placement. Assuming arguendo that A.N.'s waiver is valid, parties may not by agreement expand the statutory authority of a court. Moreover, unlike mental health treatment provisions, the dependency stat-

---

[9]RCW 74.15.010(5); WAC 388-73-014(1).

[10]Rather, the term is defined in the Family Reconciliation Act (FRA) as "a crisis residential center, or portion thereof, that has locking doors, locking windows, or a secured perimeter, designed and operated to prevent a child from leaving without permission of the facility staff." RCW 13.32A.030(14). A crisis residential center is a secure or semi-secure facility established under RCW 74.13. RCW 13.32A.030(6). The FRA does not apply to dependency proceedings. RCW 13.32A.010.

[11]See Mary Kay Becker, Washington State's New Juvenile Code: An Introduction, 14 Gonz. L. Rev. 289, 310 (1979) (noting that some parents "have been surprised to learn that detention is no longer available to them as an ongoing disciplinary tool for children who run away from home or refuse to go to school.").

[12]See RCW 13.32A.010 (FRA intended to provide services through crisis residential centers "in which children and youth may safely reside for a limited period of time."); RCW 74.13.033(d) (limiting placement in crisis residential center for shortest time possible, but not to exceed 5 days).

ute sets forth no procedures for voluntary placement.[13] This omission is also not a legislative oversight.

We recognize the trial court's well-meaning intent to fashion a treatment scheme that would best promote A.N.'s interests. But while the best interests of a dependent child are of paramount importance, the manner of addressing those interests has been set forth by the Legislature. Courts are bound by that body's decisions even when they disagree with them. The trial court exceeded its statutory authority by ordering placement of A.N. in a locked facility. We therefore reverse the court's dispositional order and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

WEBSTER and BECKER, JJ., concur.

---

[13]*See* RCW 71.34.030(2)(b) (setting forth guidelines by which child age 13 or older may admit herself to mental health treatment facility).