# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Welfare of A.N.B. (D.O.B. 2/8/99), A.C.B. (D.O.B. 12/15/99), A.J.B. (D.O.B. 5/16/02), and A.J.B. (D.O.B. 9/15/06), | ) ) ) ) ) | No. 68713-1-I Consolid. w/ No. 68714-0-I, 68715-8-I 68716-6-I |
| Minor Children. | ) ) ) | DIVISION ONE |
| CARLOS BENITEZ, JR., | ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | |
| Respondent. | ) ) | FILED: April 22, 2013 |

SPEARMAN, A.C.J. — Carlos Benitez, Jr. appeals from the superior court's finding that his four children are dependent and from its denial of his request to place the children with their paternal grandmother. Because the court's finding of dependency is supported by substantial evidence and the court did not abuse its discretion in denying Benitez's placement request, we affirm.

## FACTS

Carlos Benitez and Evangelina Ruiz are parents to four children, A.N.B. (D.O.B. 2/8/99), A.C.B. (D.O.B. 12/15/99), A.J.B. (D.O.B. 5/16/02), and A.J.B.

(D.O.B. 9/15/06). The Department of Social and Health Services (DSHS) removed all four children from their parents in 2008 and initiated a dependency action because of domestic violence between the parents. By June 2010, the court had returned all four children to the mother and dismissed the dependency.

On December 19, 2011, at which time Benitez was incarcerated, DSHS removed all four children from their mother's care due to allegations that she was unable to protect the children from criminal activity and possible sexual and physical abuse. DSHS filed a dependency petition the same day. The trial court entered default shelter care orders against Benitez and ordered the children placed in foster care. The court directed DSHS to investigate whether the children's relatives could offer appropriate placement.

On March 20, 2012, Benitez brought a motion to place A.J.B. (D.O.B. 5/16/02) with her paternal grandmother. DSHS opposed this proposed placement due to allegations of physical and sexual abuse in the grandmother's home when the children were younger. The mother also opposed the placement. A.J.B. submitted a note to the court asking not to be placed with her paternal grandmother. A.C.B. informed the court that the paternal grandmother had hit the children in the past and requested that none of the children be placed with her. A.N.B. told the court that her paternal grandmother was "not a safe person" because she was abusive to the children and had inappropriately touched them. The court denied Benitez's motion to place A.J.B. with her paternal grandmother.

At the dependency fact-finding hearing on April 18, the children's mother stipulated they were dependent as to her and agreed to continue their placement in foster care. Benitez acknowledged that he would be incarcerated until 2031 and was unavailable to parent his children, but contested dependency on the basis that, under RCW 13.34.030(6)(c), they had a "guardian" or "custodian" available to care for them. He specifically mentioned their paternal grandmother. Benitez expressed his wish to have all four children placed with their paternal grandmother.

The trial court found that Benitez was "unavailable to parent potentially for the entire minority of these children" and found each child dependent under RCW 13.34.030(6)(c) in that he or she "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development, . . ." Verbatim Report of Proceedings (VRP) (4/18/12 RP) at 13; Clerk's Papers (CP) at 106. The court entered an order of dependency and disposition, ordering among other things that the children remain in foster care or suitable other placement.[1]

Benitez filed another motion to change the placement of all four children to the paternal grandmother on May 29, 2012. On June 26, the court considered the

---

[1] The court conducted a first review hearing on July 3, 2012 and a permanency planning hearing on November 27, 2012. The court reviewed placement and maintained all of the children in foster care, where they currently remain. Issues of placement continue to be subject to regular review and modification at dependency review hearings. RCW 13.34.138.

motion and the mother's opposition. The court denied the motion, finding that placement with the paternal grandmother "would hinder reunification with the mother and could potentially traumatize the children." CP at 189.

Benitez appeals the dependency and disposition order.

## DISCUSSION

### *Finding of Dependency*

Benitez first challenges the court's determination that all four children were dependent. A trial court's findings of fact entered following a dependency hearing must be supported by substantial evidence in the record and must, in turn, support the trial court's conclusions. In re Dependency of C.B., A.B., and B.B., 79 Wn. App. 686, 692, 904 P.2d 1171 (1995).

To find a child dependent, the court must find by a preponderance of the evidence that the child meets one of the statutory definitions under RCW 13.34.030(6). In re Key, 119 Wn.2d 600, 612, 836 P.2d 200 (1992). Here, the State alleged and the court found that each child was dependent under RCW 13.34.030(6)(c) in that he or she "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development, . . ."

The sole basis for Benitez's challenge to the trial court's finding of dependency as to all four children is his contention that there was a "guardian" or "custodian" capable of caring for the children–specifically, their paternal

grandmother. He does not challenge the court's finding that he and the mother were not capable of caring for the children.

Benitez's contention is not well taken. The dependency statute defines "guardian" as a person who "(a) [h]as been appointed as the guardian of a child in a legal proceeding, including a guardian appointed pursuant to chapter 13.36 RCW; and (b) has the legal right to custody of the child pursuant to such appointment." RCW 13.34.030(9). The Basic Juvenile Court Act defines "custodian" as "that person who has the legal right to custody of the child."[2] RCW 13.04.011(6). Benitez did not produce any evidence before the trial court to show that the paternal grandmother had been appointed as the guardian of the children in a legal proceeding or that she had the legal right to custody of the children.

The mother stipulated to a finding of dependency, and Benitez admitted that due to his incarceration until 2031 he is unavailable to care for his children. 4/18/12 RP 7. On appeal, Benitez points to no authority or evidence in the record to show that the paternal grandmother or any other family members met the definition of "guardian" or "custodian." Substantial evidence supports the finding that all four children were dependent under RCW 13.34.030(6)(c).

*Placement Decision*

Benitez also challenges the trial court's placement decision made as part of its disposition order, contending its decision was based on evidence shown to

---

[2] The dependency statute does not define "custodian."

be false. We review placement decisions in a dependency proceeding for abuse of discretion. In re Dependency of A.C., 74 Wn. App. 271, 275, 873 P.2d 535 (1994). A trial court abuses its discretion if its ruling is" manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

When determining placement, the court's paramount concern is the best interests of the child. In re Dependency of A.N., 92 Wn. App. 249, 252, 973 P.2d 1 (1998). Absent good cause, DSHS "shall follow the wishes of the natural parent regarding the placement of the child in accordance with RCW 13.34.260." RCW 13.34.130(2). DSHS may only place a child with a non-relative when such placement is in the child's best interests. RCW 13.34.130(3). Furthermore,

> [u]nless there is reasonable cause to believe that the health, safety, or welfare of the child would be jeopardized or that efforts to reunite the parent and child will be hindered, the child shall be placed with a person who is willing, appropriate, and available to care for the child, and who is: (I) Related to the child as defined in RCW 74.15.020(2)(a) with whom the child has a relationship and is comfortable; or (II) a suitable person as described in subsection (1)(b) of this section.

Id. Subsection (1)(b) provides that DSHS has the authority to place the child in, among other placements, "a foster family home or group care facility licensed pursuant to chapter 74.15 RCW." RCW 13.34.130(1)(b)(ii).

We conclude the trial court did not abuse its discretion in denying Benitez's request to place the children with their paternal grandmother and determining that continued placement in foster care was in their best interests.

On March 20, 2012, several weeks before the dependency and disposition hearing, the court heard argument about moving A.J.B. to the paternal grandmother's home. At that hearing, three children provided statements to the court indicating that they wished not to be placed with the paternal grandmother and that she had physically or sexually abused the children in the past. DSHS and the children's mother also opposed placement with her. At the dependency and disposition hearing, Benitez failed to refute the concerns that were raised about the paternal grandmother at the March 20 hearing. The evidence provided good cause not to follow Benitez's wishes regarding placement, particularly where the other natural parent opposed such placement.

Benitez contends on appeal that the accusations against the paternal grandmother were shown to be false or were withdrawn when one of the children, A.N.B., admitted her falsehoods to the court at the dependency and disposition hearing. The record does not support this claim. Benitez relies on the following statements made by A.N.B. after the court found dependency and then spoke with the children. A.N.B. stated that she was not ready to return to her mother but that she had identified a family member with whom she might be placed. She then had the following dialogue with the court:

> A.N.B.: And the stuff I said before was just all a lie.
> THE COURT: Which stuff was that?
> A.N.B.: About my dad and stuff.
> THE COURT: Okay, and why did that happen?
> A.N.B.: Because I wasn't thinking straight and when I said that I just wanted to go back home but I realized that it was all wrong.

THE COURT: Okay. All right, well, thank you for straightening that out for me.

VRP (4/18/12) at 18-19. While A.N.B. admitted to previously lying, she clarified that she lied about what she said "about my dad and stuff." A.N.B. did not withdraw her claim that her paternal grandmother hit and inappropriately touched the children, nor did A.C.B. or A.J.B. withdraw their previous statements.

Affirmed.

Spearman, A.C.J.

WE CONCUR:

Appelwick, J.

Becker, J.