IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of:<br><br>C.E.C.L.,<br><br><br>a Minor Child. | No. 85591-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DÍAZ, J. — C.E.C.L. is a child whose father's parental rights were terminated. As there was also no remaining parent with parental rights, six months later, the trial court appointed counsel for C.E.C.L. at state expense pursuant to RCW 13.34.212. Last year, this court reversed the order of termination, thus restoring the father's rights. At issue is whether RCW 13.34.212 requires the State to continue to fund counsel for C.E.C.L. in this specific circumstance. We hold that that statute does not require the State to so fund counsel, and reverse and remand this matter to the trial court to vacate its order requiring the Office of Civil Legal Aid (OCLA) to continue to fund C.E.C.L.'s counsel.

## I.    BACKGROUND

For reasons fully explained in our prior order, the superior court terminated C.E.C.L.'s father's parental rights on February 7, 2022. In Re The Welfare Of

C.E.C.L., No. 84156-4-I, slip op. at 2 (Wash. Ct. App. April 10, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/841564.pdf.  On August 9, 2022, the court appointed Dana Halbert (an attorney funded through OCLA) at public expense to represent C.E.C.L.'s interests, pursuant to RCW 13.34.212(1)(a), which requires the court to appoint such an attorney when a parent's rights were terminated and when there is no parent with parental rights.

In April 2023, this court reversed the order of termination of C.E.C.L.'s father's rights.  C.E.C.L., No. 84156-4-I, slip op. at 1.

At some point thereafter, attorney Halbert reported to the court that OCLA notified her that OCLA would no longer pay the costs of her representation.  In June 2023, the superior court ordered that OCLA continue to pay for Halbert's representation of C.E.C.L. at state expense, finding that "[n]othing in the statute or this Court's order suggests that an appointment under RCW 13.34.212(1) would end if the termination of parental rights were overturned or allows the State (via OCLA) to cease paying for the representation should that occur."  The court ordered OCLA to be notified of this decision and permitted its attorneys to explain why it may disagree with the decision at a scheduled hearing.

In July 2023, OCLA moved to intervene and requested reconsideration. The trial court allowed partial intervention, but denied the motion for reconsideration.

As part of the court's reasoning, it explained:

I think it's a fair reading of the statute that you could represent [C.E.C.L.] in an appellate proceeding in the termination case on this issue because it doesn't relate to the termination of the parent-child relationship . . . and so the OCLA's determination that funding Ms.

Halbert's appointment would be contrary to the appropriation of the legislature just isn't true. The legislature told OCLA to fund these sorts of appointments, which OCLA has done up until the rights were reinstated for the dad. And there -- and nothing in the statute suggests that continuing to fund it would violate the appropriation of the legislature.

OCLA petitioned for discretionary review, which we granted.

## II.     ANALYSIS

We review questions of statutory interpretation de novo. Woods v. Seattle's Union Gospel Mission, 197 Wn.2d 231, 238, 481 P.3d 1060 (2021). "Our primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent as manifested by the statute's language." Id.

"Generally, when the meaning of a statute is 'plain on its face,' a court must give effect to that meaning." In Matter of Dependency of D.L.B., 186 Wn.2d 103, 116, 376 P.3d 1099 (2016) (quoting State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). "To discern a statute's plain meaning, we consider the text of the provision in question, taking into account the statutory scheme as a whole." Matter of W.W.S., 14 Wn. App. 2d 342, 358, 469 P.3d 1190 (2020) (citing Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

"Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." Spokane County v. Dep't of Fish & Wildlife, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (quoting Whatcom County v. City of Bellingham, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). "[W]e avoid a literal reading if it would result in unlikely, absurd or strained consequences." Whatcom County, 128 Wn.2d at 546.

OCLA first argues that the plain language of RCW 13.34.212(1) does not require OCLA to fund continued legal representation of C.E.C.L. when the conditions required for representation are no longer present, i.e., once this court reversed C.E.C.L.'s father's termination.  We agree.

Under the statute:

The court shall appoint an attorney for a child in a dependency proceeding *six months after granting a petition to terminate* the parent and child relationship pursuant to RCW 13.34.180 *and when there is no remaining parent with parental rights.*

RCW 13.34.212(1)(a) (emphasis added).  And RCW 13.34.212(1)(c) states that, "Subject to availability of amounts appropriated *for this specific purpose*, the state shall pay the costs of legal services provided by an attorney appointed *pursuant to (a) of this subsection.*"  (Emphasis added.)

Additionally:

Legal services provided by an attorney pursuant to (a) of this subsection *do not include representation of the child in any appellate proceedings* relative to the termination of the parent and child relationship.

RCW 13.34.212(1)(e) (emphasis added).

We must read subsections of (1)(a), (1)(c) and (1)(e) together because, when discerning the meaning of a statute, we consider the statutory scheme "as a whole."  <u>Matter of W.W.S.</u>, 14 Wn. App. 2d at 358.  In this case, RCW 13.34.212(1)(a) and (c), when read together, identify a "specific" situation for which OCLA is required to appoint an attorney for a dependent child, namely when six months have elapsed after the termination of one parent's rights and when there is no remaining parent with rights, making the child "legally free."  See <u>In re</u>

Dependency of K.W., 199 Wn.2d 131, 137 n.2, 504 P.3d 207 (2022) (defining the shorthand "legally free" as "when no one holds parental rights and the child is legally free for adoption") (citing RCW 13.34.210).[1]  There is nothing in the statute which contemplates requiring funding in any other situations, other than the "specific" situation in which a child is "legally free," i.e., bereft of any parent with rights over them.

Moreover, subsection (1)(e) makes clear that, even in a situation where a child is "legally free," this funding is not open ended or indefinite, namely by excluding state-funded legal counsel provided for in subsection (1)(a) for appellate proceedings related to the parent's termination.

Here, this court reversed the superior court order that terminated C.E.C.L.'s father's parental rights, thereby restoring his rights.  C.E.C.L., No. 84156-4-I, slip op. at 12.  Therefore, under a plain language reading, the first condition of RCW 13.34.212(1)(a) was no longer present, i.e., there was no longer an operative order "granting a petition to terminate the parent and child relationship pursuant to RCW 13.34.180" because the order granting such a petition had been reversed.  In turn, the requirement in subsection (1)(c) to fund this "specific purpose" evaporated as well.  Thus, OCLA no longer was required to fund counsel for C.E.C.L., and a court order otherwise would contravene the purpose for which the legislature statutorily

---

[1] In considering OCLA's arguments, the trial court accurately noted that the term "legally free" is "nowhere in the statute or in any appropriation legislation cited by OCLA."  Respectfully we believe this disagreement is one of semantics.  The concept our Supreme Court defined in In re Dependency of K.W. is the same as the concept here.  And ultimately it is just a shorthand for a condition that is not present on the facts here.

authorized funding for OCLA attorneys.[2]

Ultimately, the superior court issued its well-intentioned[3] order because it found that RCW 13.34.212(1) "states only the 'condition' for the *appointment* [of counsel], and is silent on the *ongoing* conditions." Clerk's Papers (CP) at 34 (citing RCW 13.34.212(1)(e) (emphasis added)). In particular, it held that the statute, which excluded funding only for appellate proceedings, "could have similarly excepted, but did not except, Ms. Halbert's representation in the 'dependency proceedings' (both actions) upon reversal." Because the legislature did not, the trial court avers we must presume the absence of such language is intentional.[4]

---

[2] Furthermore, we agree with OCLA that to require OCLA to fund a dependent child's attorney in anything other than these very narrow circumstances could lead to absurd results. Taken to its logical conclusion, an order such as the one issued here would require the State to continue to fund any and all legal representation for the child after an attorney is appointed under RCW 13.34.212(1)(a), with the sole exception of representation in appellate proceedings related to termination of the parent-child relationship in (1)(e). This interpretation could require OCLA to fund legal representation in myriad other matters (family law, landlord tenant disputes, estate matters) in addition to dependency, regardless of whether a parent's rights are fully and finally restored. We decline to read the statute in this way because we presume the legislature did not intend such "strained consequences." Whatcom County, 128 Wn.2d at 546.

[3] The court concluded that it was in C.E.C.L.'s best interest to have the same counsel continue to represent him because (1) the same attorney represented the now-3-year-old C.E.C.L. since birth, and (2) discharging his counsel and appointing another would further delay a future permanency trial. Although the trial court acted to ensure unbroken continuity of service for C.E.C.L., a court's well-meaning intent must still be exercised within the bounds of legislatively granted authority. See, e.g., State v. G.A.H., 133 Wn. App. 567, 580, 137 P.3d 66 (2006) (citing In re Dependency of A.N., 92 Wn. App. 249, 253-54, 973 P.2d 1 (1998)).

[4] Similarly, in its first order, the court held that there is nothing in RCW 13.34.212(1)(a) that expressly states funding would end, should the order granting a petition be reversed. That reading, while again accurate, ignores the requirement of subsection (1)(c) that state funding is mandated only for the "specific" situation in which the conditions in (1)(a) *are* present. Thus, "when the

6

This argument, while laudably intended for the benefit of the child, fails for two additional reasons. First, only if a statute is ambiguous do courts "resort[] to [such] principles of statutory construction . . ." Taylor v. Burlington N.R.R. Holdings, Inc., 193 Wn.2d 611, 617, 444 P.3d 606 (2019). Here the plain language of subsection (1)(c) limits the mandate for state funding to a specific situation, with two conditions, one of which again vanished upon this court's earlier ruling. Second, and somewhat relatedly, the maxim upon which the court's reasoning relies ("unius est exclusion alterius") "is subordinate to the primary rule of statutory interpretation, which is to follow legislative intent." O.S.T. ex rel. G.T. v. Regence BlueShield, 181 Wn.2d 691, 701, 335 P.3d 416 (2014). And, "the legislature's intent [is] manifested by the statute's language." Woods, 197 Wn.2d at 238.[5]

In short, the plain language of the statute does not require OCLA to fund C.E.C.L.'s counsel in this circumstance.

---

meaning of a statute is 'plain on its face,' a court must give effect to that meaning." In Matter of Dependency of D.L.B., 186 Wn.2d at 116.

[5] At the hearing on OCLA's motion and in its briefing, both OCLA and the Department of Children, Youth, and Families represented that county funding for C.E.C.L.'s counsel was conditionally approved or available respectively. In 2021, the legislature expanded a child's right to counsel in dependency proceedings, including allocating funding by county. The program will be phased in by county, but such provisions will not be operable in King County until 2027. Children's Representation Program, WASH. OFF. OF CIV. LEGAL AID, https://ocla.wa.gov/about-us/programs/childrens-representation/ [https://perma.cc/P9QW-MCLB]. That said, the record does not show any alternate funding for C.E.C.L.'s counsel and, thus, the only issue before us relates to state funding for C.E.C.L.'s counsel. Similarly, neither party has filed supplemental briefs regarding funding obtained since OCLA's reply, including potentially any funding authorized in the event C.E.C.L. is again legally free. Thus, we have one and only one live issue before us.

### III.    CONCLUSION

We reverse and remand this matter to the trial court to vacate its order requiring OCLA to fund C.E.C.L.'s counsel.

Díaz, J.

WE CONCUR: